## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| City of Rome, Georgia; Hart County, Georgia; City of Cartersville, Georgia; City of Hartwell, Georgia; Cobb County, Georgia; City of Cedartown, Georgia; City of Dalton, Georgia; Gwinnett County, Georgia; Fulton County, Georgia; City of Rockmart, Georgia; City of East Point, Georgia; City of Warner Robins, Georgia; City of Tybee Island, Georgia; Dekalb County, Georgia; City of College Park, Georgia; City of Alpharetta, Georgia; City of Macon, Georgia; Augusta-Richmond County, Georgia; Clayton County, Georgia; And All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. File No. 4:05-CV-249 (HLM) |
| Hotels.com, L.P.; Hotels.com GP, LLC; Hotwire, Inc.; Cheap Tickets, Inc.; Cendant Travel Distribution Services Group Inc.; Expedia, Inc.; Internetwork Publishing Corp. (d/b/a lodging.com); Lowest Fare.com, Inc.; Maupintour Holding, LLC; Orbitz, Inc.; Orbitz, LLC; Priceline.com, Inc.; Site59.com, LLC; Travelocity.com, Inc.; Travelocity.com, LP; Travelweb, LLC; Travelnow.com, Inc.; Onetravel, Inc. (d/b/a onetravel.com); And Does 1 through 1000, Inclusive, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

    
## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION..................................................................................1

II.     STATEMENT OF FACTS....................................................................5

        A.      Plaintiffs' Class Allegations.................................................5

        B.      Defendants All Operate Under the "Merchant Model" ..................7

        C.      The Defendants Are Liable to All Members of the
                Putative Class for Hotel Excise Taxes....................................9

        D.      Defendants' Business Practice and Merchant Agreements Are the
                Same in All of Plaintiffs' Jurisdictions In All Material Respects.....10

        E.      All Class Members' Ordinances
                Similarly Impose Excise Taxes...........................................12

III.    ARGUMENT AND CITATION OF AUTHORITY............................ 14

        A.      General Class Certification Standards..................................14

        B.      Plaintiffs Satisfy the Rule 23(a) Requirements.........................15
                1.      Numerosity........................................................15
                2.      Commonality......................................................16
                3.      Typicality..........................................................18
                4.      Adequacy of Representation......................................19

        C.      Plaintiffs Satisfy the Rule 23(b)(3) Requirements..................... 21
                1.      Predominance .................................................21
                2.      Superiority.........................................................23

        D.      A 23(b)(2) Class Is Appropriate Because Defendants
                Have Acted On Grounds Applicable to the Whole Class............ 25

IV.     CONCLUSION.................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. Inc. v. Windsor*
521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ...........................21

*Anderson v. Garner*
22 F. Supp. 2d 1379 (N.D.Ga. 1997) ...............................................5

*Babineau v. Fed. Express Corp.*
576 F.3d 1183 (11th Cir. 2009 ...............................................2, 15, 21

*Busby v. JRHBW Realty, Inc.*
513 F.3d 1314 (11th Cir. 2008) ...............................................20

*City of Gallup, New Mexico v. Hotels.com, L.P.*
No. 07-cv-00644 JEC/RLP (D.N.M. Jul. 7, 2009) [Exh. C] .................4, 8, 11

*City of Goodlettsville, Tennessee v. Priceline.com, Inc.*
267 F.R.D. 523 (M.D.Tenn. 2010) [Exh. A]...........................4, 8, 19, 23, 24

*City of Rome v. Hotels.com, L.P.*
2006 WL 6595753 (N.D. Ga.) [Doc. 80]............................................*passim*

*City of San Antonio v. Hotels.com*
2008 WL 2486043 (W.D.Tex. May 27, 2008) [Exh. D].......4, 8, 11, 16, 17, 19, 24

*County of Monroe, Florida v. Priceline.com, Inc.*
265 F.R.D. 659 (S.D.Fla. 2010) [Exh. B]............ 4, 11, 14, 15, 16, 18, 19, 20, 24

*Expedia, Inc. v. City of Columbus*
285 Ga. 684 (2009)...............................................................*passim*

*Heffner v. Blue Cross & Blue Shield of Ala.*
443 F.3d 1330 (11th Cir. 2006)..................................................25

*Hotels.com, L.P. v. City of Columbus*
286 Ga. 130 (2009)……………………………………………………………....8

*Kerce v. West Telemarketing, Corp.,*
575 F.Supp.2d 1354 (S.D.Ga. 2008)……………………………………….……5

*Klay v. Humana, Inc.*
382 F.3d 1241 (11th Cir. 2004)………………………………………...……..14

*Murray v. Auslander*
244 F.3d 807 (11th Cir. 2001)…………………………………………….…..25

*Rhodes v. Cracker Barrel Old Country Store, Inc.*
213 F.R.D. 619 (N.D.Ga. 2003)……………………………………………….…5

*In re Scientific Atlanta, Inc. Sec. Litig.*
571 F.Supp.2d 1315 (N.D.Ga. 2007) …………………………………15, 18, 21

*In re Tri-State Crematory Litig.*
215 F.F.D. 660 (N.D.Ga. 2003)……………………….……… 15, 19, 21, 22, 23

*Vega v. T-Mobile USA, Inc.*
564 F.3d 1256 (11th Cir. 2009)……………………………………..15, 16, 18

*Williams v. Mohawk Indus., Inc.*
568 F.3d 1350 (11th Cir. 2009)………………………………….3, 16, 22, 24

## Statutes

1998 Ga. Laws Act 869 (H.B.609)……………………………………………..12

O.C.G.A. § 48-8-2(3)(D), *et seq.*……………………………………………….13

O.C.G.A. § 48-13-50……………………………………………………*passim*

O.C.G.A. § 48-13-51…………………………………………………… 9, 12

O.C.G.A. § 48-13-51(a)(1)(A)......................................................12

O.C.G.A. § 48-13-51(a)(1)(B)(i) .................................................2, 9

O.C.G.A. § 48-13-53..................................................................... 12

## **Rules**

Fed.R.Civ.P. 23 ........................................................................*passim*

Fed.R.Civ.P. 23 (a)..................................................................2, 3, 15

Fed.R.Civ.P. 23 (a)(1)............................................................. 15, 16

Fed.R.Civ.P. 23 (a)(2)....................................................................16

Fed.R.Civ.P. 23 (a)(3)....................................................................19

Fed.R.Civ.P. 23 (a)(4)....................................................................19

Fed.R.Civ.P. 23 (b)(2)............................................................ 2, 3, 25

Fed.R.Civ.P. 23 (b)(3)..................................................2, 4, 21, 22, 23

Fed.R.Civ.P. 23 (g)................................................................... 21

Local Rule 23.1, N.D.Ga...............................................................2

# I. INTRODUCTION

Plaintiffs assert multiple claims resulting from Defendants' concerted efforts to avoid payment of excise taxes on "rooms, lodgings and accommodations" in the State of Georgia.[1] Plaintiffs show that Defendants do not remit to taxing authorities such as Plaintiffs certain excise tax revenue that Defendants have collected or, alternatively, should have collected from occupants. This Court is familiar with Plaintiffs' allegations, having considered them when it denied Defendants' Motion to Dismiss regarding Plaintiffs' excise tax claims. As summarized in its Order[2]:

> Defendants are charging and collecting excise...taxes from consumers, but Defendants are not remitting all of those taxes to Plaintiffs and the appropriate governmental authorities. Defendants contract with hotels for rooms at discounted room rates. Defendants then mark up their inventory of rooms and sell the rooms to members of the public, who actually occupy the rooms. Defendants charge and collect excise...taxes from those occupants based on the marked up room rates, but Defendants only remit to Plaintiffs and the appropriate governmental authorities the excise... tax amounts ... based on the lower, negotiated room rates. Defendants then pocket the difference between the excise...taxes charged and the excise... taxes remitted, thus failing to remit the correct amount of taxes due and owed to Plaintiffs and the appropriate governmental authorities.

This Court expressly found that Plaintiffs have stated viable excise tax claims against Defendants:

---

[1] The Excise Tax on Rooms, Lodgings, and Accommodations ("Hotel Excise Tax Statute") is found at O.C.G.A. § 48-13-50, *et seq.*

[2] Order, May 8, 2006 ("2006 Order") at 5-6 (citations to Complaint omitted). [Doc. 80; also cited as *City of Rome v. Hotels.com, LP*, 2006 WL 6595753 (N.D. Ga.).]

... Plaintiffs have stated a claim for relief on the grounds that Defendants have failed to properly identify the taxes charged and paid by hotel guests and have not remitted moneys collected as taxes to Plaintiffs or the proper government authorities. ... Defendants are the entities actually collecting the excise taxes from the hotel guests and, pursuant to O.C.G.A. § 48-13-51(a)(1)(B)(i), those taxes actually collected must be remitted to Plaintiffs.[3]

Plaintiffs seek certification of the following class ("Class"):

**Plaintiffs and all counties and municipalities in the State of Georgia that levy an excise tax on rooms, lodgings, and accommodations pursuant to O.C.G.A. §48-13-50, *et. seq.***

Certification pursuant to Fed.R.Civ.P. 23 and LR 23.1 is appropriate as this action meets the requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy of representation; Rule 23(b)(2) – Defendants have refused to remit taxes owed on grounds that apply generally to the Class and injunctive and declaratory relief is appropriate for the Class as a whole; and Rule 23(b)(3) – "questions of law or fact common to class members predominate over any questions affecting only individual members [and] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[4]

---

[3] *Id.*, at 12-13. This Court also found that "Plaintiffs have stated claims for conversion, and unjust enrichment, and have asserted claims under Georgia's Uniform Deceptive and Unfair Trade Practices Act." *Id.*, at 16. *See also, Expedia, Inc. v. City of Columbus*, 285 Ga. 684, 688 (2009) (OTC that "contracted with City hotels to collect hotel occupancy taxes ... has rendered itself duty-bound to remit the taxes it has collected to the City's taxing authority," citing the 2006 Order).

[4] *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009).

**The proposed Class satisfies the specific requirements of Rule 23(a):**

(a)    Numerosity – At least 259 Georgia cities and counties impose similar excise taxes that Defendants have not paid;[5]

(b)    Commonality – Issues of law and fact are common to the Class;

(c)    Typicality – Plaintiffs and the other Class members have enacted similar ordinances pursuant to the Hotel Excise Tax Statute that impose excise taxes on Defendants, and Defendants have collected or should have collected the entire amount of such taxes due, but have not remitted same; and

(d)    Adequacy of representation – Plaintiffs have no conflicts of interest and will adequately prosecute the claims of the Class. Proposed Class Counsel have extensive experience as counsel in other actions involving the same subject matter and Defendants as this case and have substantial class action experience and expertise.

**The proposed Class meets the requirements of Rule 23(b)(2):[6]**

The Defendants have uniformly denied their liability to the putative Class members for the excise taxes at issue and refused to remit actual excise taxes collected. All putative Class members are in need of the same declaratory and

---

[5] *See,* Declaration of Robert M. Brinson in Support of Plaintiffs' Motion for Class Certification ("Brinson Decl."), at ¶¶4-5; Brinson Decl., Exhibit A (disk containing Georgia local ordinances as compiled by Plaintiffs' counsel).

[6] *See, e.g., Williams v. Mohawk Indus., Inc.* 568 F.3d 1350. 1358-9 (11th Cir. 2009).

injunctive relief: (1) a declaration that Defendants are required to collect excise taxes on the entire consideration paid by the customer for the hotel room and remit same to the Class member jurisdictions; and (2) an injunction requiring the Defendants to do so.

**As required by Rule 23(b)(3), common questions of law and fact "predominate" and a class action is the "superior" method "for fairly and efficiently adjudicating the controversy":**

Defendants' conduct has been the same regarding all Class members. Defendants (1) contract with hotels in Plaintiffs' jurisdictions and agree to collect and remit all applicable taxes from their customers[7] and (2) acquire hotel rooms at wholesale rates, sell them to guests at retail rates, collect taxes on the retail rates (or should have collected such taxes), and then fail to remit the entire taxes due to Plaintiffs. Each Class member thereby suffers the same type of injury – lost revenue from unpaid excise taxes.

Four other federal courts have certified similar classes for such reasons.[8]

---

[7] *See, e.g.,* Declaration of David W. Davenport in Support of Plaintiffs' Motion for Class Certification ("Davenport Decl.") (identifying sample contracts as produced by Defendants); *Id.*, Exhibit A (disk containing contracts) (filed under seal).

[8] *City of Goodlettsville, Tennessee v. Priceline.com, Inc.*, 267 F.R.D. 523 (M.D.Tenn. 2010); *County of Monroe, Florida v. Priceline.com, Inc.*, 265 F.R.D. 659 (S.D.Fla. 2010); *City of Gallup, New Mexico v. Hotels.com, L.P.*, No. 07-cv-00644 JEC/RLP (D.N.M. Jul. 7, 2009); *City of San Antonio v. Hotels.com*, 2008 WL 2486043 (W.D.Tex. May 27, 2008). For the Court's convenience, Plaintiffs have attached copies of these decisions as Exhibits A-D respectively.

## II.  STATEMENT OF FACTS

Plaintiffs have sufficient factual basis to obtain the requested class certification. In considering class certification, a court ordinarily does not inquire as to whether plaintiffs have adduced sufficient evidence to prevail on the merits of the claims asserted; it is sufficient that evidence exists to support their claims.[9]

### A.     Plaintiffs' Class Allegations.

Plaintiffs allege the following claims that are uniform to the proposed Class:

(1)     Defendants contracted with hotels in Plaintiffs' jurisdictions to collect and remit, on the hotels' behalf, taxes from their customers. Defendants thus voluntarily assumed the hotels' responsibilities to collect and remit excise taxes and interjected themselves into the local taxation scheme. Plaintiffs are the third party beneficiaries of said agreements, and Defendants are required to comply with the collection and remittance requirements of the excise tax statutes to which they have submitted themselves;[10]

---

[9] *Rhodes v. Cracker Barrel Old Country Store, Inc.,* 213 F.R.D. 619, 673 (N.D.Ga. 2003); *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1382-83 (N.D.Ga. 1997).  *See also, Kerce v. West Telemarketing, Corp.,* 575 F.Supp.2d 1354, 1366 (S.D.Ga. 2008) ("Conditional certification is proper based on detailed allegations by the plaintiff plus admissions by the [defendant] and other documentary evidence.")

[10] Second Amended Complaint (Motion to Amend Complaint Exhibit A [Doc. 356], ¶¶ 48, 87. *See also,* July 10, 2009, Order [Doc. 272], at p. 9, 12-14; *Expedia, Inc. v. City of Columbus, supra,* at 688.

(2)    Defendants have collected from their customers excise taxes owed Plaintiffs
       and have kept the tax revenue rather than remit it to Plaintiffs; [11]

(3)    Alternatively, if Defendants have not collected excise taxes from Georgia
       consumers, they were obligated under the applicable statutes and ordinances
       to collect such taxes from their customers and remit same to Plaintiffs; [12]

(4)    Defendants fail to inform the hotels or public and fail to provide receipts to
       the occupants showing the amount of all taxes collected by category and/or
       otherwise misrepresent to the public that Defendants are in fact collecting
       and remitting the taxes; [13]

(5)    Defendants have converted such monies for their own use and benefit; [14]

(6)    Defendants have been unjustly enriched; [15] and

(7)    Plaintiffs are entitled to declaratory and injunctive relief and imposition of a
       constructive trust. [16]

---

[11] First Amended Complaint [Doc. 88] and Second Amended Complaint, ¶¶47-51.
*See also, Expedia, Inc. v. City of Columbus, supra,* at 688.
[12] First Amended Complaint and Second Amended Complaint, ¶¶ 45-46, 61-66.
[13] *Id.,* ¶¶ 52, 67. *See also, Expedia, Inc. v. City of Columbus, supra,* at 685.
[14] *Id.,* ¶¶ 76-79.
[15] *Id.,* ¶¶ 47-48, 81.
[16] *Id.,* ¶¶ 84, 86-89.

## B.     Defendants All Operate Under the "Merchant Model"

Defendants all operate, in pertinent part, under what is called the "Merchant Model" for booking and selling hotel rooms to the public.[17]

The Supreme Court of Georgia described this "model" as follows[18]:

[The OTC[19]] contract[s] with hotels for the right to broker or facilitate the reservation of hotel rooms at a discount or "wholesale rate." [It] then advertises and offers the rooms for sale to the public on its website. When a customer purchases a hotel room reservation from [the OTC, it] charges the customer an amount that is greater than the wholesale rate. This "marked-up" amount is the "room rate." Although [the OTC] states that the room rate is a combination of the wholesale rate and its facilitation fee, it does not disclose to the public which portion of the "room rate" is for its facilitation fee. [The OTC] also does not disclose to the hotel the amount of the room rate charged to [its] customers.[20]

[The OTC] provides in its contracts with hotels that it "shall collect all applicable taxes from its customers." Thus, at the time a reservation is made, [it] notifies the customer that it is collecting a certain amount of money for "taxes and service fees." [The OTC] does not disclose to the customer which portion of the "taxes and service fees" is for "taxes" or which portion is for "service fees." At the end of the transaction, the customer pays [it] directly in a total amount that equals the "room rate" plus "taxes and service fees."

---

[17] *See,* Declaration of John W. Crongeyer in Support of Plaintiffs' Motion for Class Certification (Filed Under Seal) ("Crongeyer Decl."), at ¶¶ 15-31 (citing testimony and other admissions regarding Defendants' Merchant Model practices).

[18] *Expedia, Inc. v. City of Columbus, supra,* at 684-685 (footnote omitted).

[19] The courts characterize Defendants collectively as online travel companies ("OTCs") or internet travel companies ("ITCs").

[20] This Court has previously noted similar allegations by Plaintiffs herein, holding that Plaintiffs had stated a cause of action against Defendants for failing to remit excise taxes. *See,* 2006 Order [Doc. 80], at ¶¶ 12–13.

7

Upon checking into the hotel, the customer does not pay the hotel any money for the room or any fees or taxes.... After the customer has completed his hotel stay, the hotel is required to send [the OTC] an invoice for the wholesale rate and the occupancy taxes based on the wholesale rate. Upon receipt of the invoice, [the OTC] remits the payment to the hotel which pays the taxes to the municipal tax authority. Under [the OTC]'s merchant model ..., the hotel occupancy tax amount is calculated based on the wholesale rate [the OTC] negotiates with hotels. [The OTC] retains whatever it has collected over the amount of the remittance to the hotel. If the hotel fails to submit an invoice to [the OTC] in the time period designated by contract, then [the OTC] retains all monies collected from the customer, including any money purportedly collected for taxes.

Although the above may be specific to the Expedia entities, courts recognize the uniformity of "Merchant Model" practice amongst OTCs such as Defendants.[21] Defendants tout the "Merchant Business Model" in the marketplace (and also uniformly claim that occupancy taxes are only the responsibility of the hotels).[22]

---

[21] *City of San Antonio, supra,* at *2 ("Although Defendants have changed the characterization of their merchant model in the past few years, the manner in which they conduct business has not changed-they remain the merchant of record for all such transactions"); *Hotels.com, L.P. v. City of Columbus,* 286 Ga. 130, 130 (2009) (main business model is "merchant model"); *City of Goodlettsville, supra,* at 527 ("Merchant Model ... has become the dominant business model [for OTCs] in recent years"); *City of Gallup, supra,* at 8 ("Defendants deal with individual hotels in much the same way, following the 'merchant model' of doing business").

[22] "The service and fees of the [OTCs] are not subject to occupancy taxes," etc. *www.interactivetravel.org/IndustryBackground/Attachments/HowMerchantBusinessModelWorks.pdf* (discussing "net-rate" or "negotiated rate" model and admitting OTCs charge a "tax recovery fee" to hotel room buyers) (Exhibit E). Many of the Defendants are members of Interactive Travel Services Association, a trade group that emphasizes the OTCs' common practices and urges the 'company line' that taxes such as sought by Plaintiffs herein do not have to be paid.

**C.     The Defendants Are Liable to All Members of the Putative Class for Hotel Excise Taxes.**

As this Court has previously found:

Every person or entity subject to a tax levied [by O.C.G.A. § 48-13-51] shall be liable for the tax at the applicable rate on the lodging charges actually collected or, "if the amount of taxes actually collected from the hotel or motel guest is in excess of the total amount that should have been collected, *the total amount collected must be remitted.*"

     Additionally, the excise tax is also imposed upon every person or entity who is a hotel or motel guest and who received a room, lodging or accommodation that is subject to the tax. "*The person or entity collecting the tax from the hotel or motel guest shall remit the tax* to the governing authority imposing the tax, and the tax remitted shall be a credit against the tax imposed by [O.C.G.A. §48-13-51(a)(1)(B)(i)] on the person or entity providing the room, lodging or accommodation.[23]

Plaintiffs and all members of the putative class have enacted ordinances in accordance with the provisions of O.C.G.A. §48-13-51. Plaintiffs allege that Defendants provide and/or furnish hotel accommodations to customers in their jurisdictions and are liable for the hotel excise taxes on "the price the [OTC] demands from the consumer for the right to occupy the hotel room."[24] Plaintiffs allege that Defendants are liable for such taxes as "Operators" of hotels pursuant to O.C.G.A. §48-13-51(a)(1)(B)(i.)[25] But, in any event, Defendants have voluntarily inserted themselves into the local taxation scheme for hotels and their guests and

---

[23] *City of Rome, supra,* at 4 (emphasis in original; citations omitted) [Doc. 80].
[24] *Expedia, Inc. v. City of Columbus, supra,* at 689.
[25] First and Second Amended Complaints, ¶¶ 45-46, 61-66.

undertaken the obligation to collect and remit excise taxes by virtue of their

conduct and contractual agreements with the hotels in Plaintiffs' jurisdictions.[26]

Moreover, as found by the Georgia Supreme Court, Defendants actually collect

hotel taxes from their customers and are accountable to the Plaintiffs' taxing

authorities for the remission of the taxes that they have actually collected.[27]

**D.      Defendants' Business Practice and Merchant Agreements Are the Same in All of Plaintiffs' Jurisdictions In All Material Respects.**

OTC/hotel merchant agreements can take several forms.[28] However, the

OTCs conduct business in a manner that includes collecting taxes,[29] and

Defendants' contracts with hotels reflect this practice.[30] For example, the Expedia

contract quoted by the Georgia Supreme Court, which is a national contract, states

that Expedia "shall collect all applicable taxes from its customers."[31]

---

[26] *Expedia, Inc. v. City of Columbus, supra*, at 691. Second Amended Complaint, ¶¶ 48, 87.

[27] *Expedia, Inc. v. City of Columbus, supra*, at 684-685 (Defendants "collect monies earmarked for the payment of the customer's hotel taxes ... by virtue of [their] private agreements with [Georgia] hotels.").

[28] *See,* Davenport Decl., Exhibits (representative merchant agreements).

[29] In response to certain of Plaintiffs' allegations regarding Defendants' business practices (First Amended Complaint, ¶ 51), Defendants generally admitted that their business includes collecting "tax recovery charges" from their "customers." *See, e.g.,* Answers, ¶ 51 [Doc. 112, 114, 117, 120-122, 125-127, 129].

[30] Davenport Decl., Exhibits 1, 22, 27, 42 (quoting tax collection clauses).

[31] *Expedia, Inc. v. City of Columbus, supra*, at 684-685. *See also,* Davenport Decl., Exhibits 16, 21 (Expedia contracts with language quoted by Supreme Court).

The OTCs also often indemnify hotels against tax liability, including taxes that are not remitted but are due on the "spread" between the "wholesale rate" paid to the hotel and the "room rate" charged to the consumer.[32]

As the District Court of the Western District of Texas has found[33]:

After reviewing the evidence, the Court finds that while every hotel contract may not contain the same terms, **the material aspects of the agreements and the practical implications thereof are the same or substantially similar.**

The contractual obligations to collect all applicable taxes do not vary between the political jurisdictions of the state or states and Defendants' business model is the same throughout this State.[34] In fact, Defendants have admitted:

A.    Defendants use the same "nationwide" business model;

B.    The same basic categories of charges are applied uniformly;

C.    Defendants' "national system" of booking rooms using merchant model hotel programs has not changed;

D.    Defendants use computerized systems that operate "nationally;"

---

[32] *See,* Davenport Decl., Exhibits 7, 13, 15-17, 20, 21, 24-26, 28, 36-39, 41, 47-50. Such clauses illustrate the hotel industry's recognition that OTCs should pay taxes on the entire amount charged to the room's purchaser. *See also, Id.,* Exhibits 7, 8, 13, 15-18, 20, 21, 24, 26, 34, 37-41, 47-50 (contracts stating/indicating that taxes could be due upon difference between wholesale and retail rates).

[33] *City of San Antonio, supra,* at *10 (emphasis added).

[34] *City of Gallup, supra,* at 8 ("Defendants' merchant model of operation is the same throughout the state"). *Accord, County of Monroe, supra,* at 670.

E.     Defendants all calculate their tax recovery charges by multiplying the

applicable tax rate by the net/wholesale rate for the room;

F.     Defendants' core operating companies all handle merchant model

bookings in fundamentally the same way;

G.     Defendants use uniform policies with respect to consumers; and

H.     Defendants have no "novel" or unique policies for the State of Georgia.[35]

### E.     All Class Members' Ordinances Similarly Impose Excise Taxes.

Plaintiffs' and the putative class members' ordinances are promulgated as

provided in the Georgia Hotel Excise Tax enabling Statutes, specifically O.C.G.A.

§§48-13-51 and 48-13-53.[36] O.C.G.A. §48-13-51 was revised in 1998,[37] and

pursuant to O.C.G.A. §48-13-51(a)(1)(A), all ordinances promulgated as provided

in the enabling statutes prior to July 1, 1998 are expressly conformed to the

requirements of the revised O.C.G.A. §48-13-51.[38] Said requirements are also by

law part of all subsequent ordinances enacted pursuant to the enabling statute.

---

[35] *See*, Crongeyer Decl., ¶¶ 15-31.

[36] *See, e.g.,* Brinson Decl., Exhibit C (spreadsheet categorizing ordinances).

[37] 1998 Ga. Laws Act 869 (H.B.609) (amending § 48-13-51 in part "to change certain provisions regarding the levy and collection of [the Hotel Excise] tax").

[38] "The provisions of this Code section shall control over the provisions of any local ordinance or resolution to the contrary enacted pursuant to <u>Code Section 48-13-53</u> and in effect prior to July 1, 1998. Any such ordinance shall not be deemed repealed by this Code section but shall be administered in conformity with this Code section." *Id.*

Thus, any variations in the exact language of the Georgia ordinances are immaterial because they are all conformed to the state statute, which the Georgia Supreme Court has already found requires Defendants to remit the excise tax amount due on the total amount charged to the consumer.

Even without the conforming effect of the state statutory scheme, the individual local ordinances of the Plaintiffs and the putative Class all impose similar taxes and obligations on the furnishing of accommodations for value in their jurisdictions. All impose a tax upon the occupancy of rooms, to be paid by the occupant and collected by the provider/furnisher/operator/dealer to the public.[39]

Defendants are liable for the excise tax imposed upon the "furnishing" of the rooms. Minor variations in the ordinances do not foreclose consolidation of the cities' and counties' claims as a class: the ordinances are all promulgated pursuant to the same statute, all impose the same excise tax pursuant to the statute, and all impose liabilities upon the same persons as the statute.[40]

---

[39] *See, e.g.,* Brinson Decl., Exhibit C (spreadsheet). The Statute uses these terms interchangeably. *Compare* §48-13-51(a)(1)(B)(i) "person…**operating** a hotel" *with* §48-13-51(a)(1)(B)(ii) "entity **providing** such room" *and with* §48-13-50.2 (2) "person … **furnishing** for value … any rooms" (emphasis supplied). A few jurisdictions impose the tax and obligation to collect the tax upon "Dealers," which term also clearly encompasses the Defendant OTCs. *See,* O.C.G.A. §48-8-2 (3)(D), *et. seq.*

[40] *See, e.g.,* Brinson Decl., Exhibit C (spreadsheet).

The amount of the excise tax is calculated as a percentage of the lodging charges actually collected under the Class members' ordinances.[41] As to the OTC Defendants, "the applicable tax rate is applied to the price [the OTC] demands from the consumer for the right to occupy the hotel room and not the price [the OTC] agrees to pay the hotel for the room."[42] The applicable percentage of the lodging charges actually collected is the amount that Defendants are required to remit to the Georgia cities and counties that impose such taxes.[43]

Pursuant to such ordinances, each of the Class members would be entitled to recover excise taxes on the entire amount that the occupants of the rooms in their respective city or county were charged by the Defendants.

## III. ARGUMENT AND CITATION OF AUTHORITY

### A. General Class Certification Standards

"The decision to certify is within the broad discretion of the district court."[44]

"'The burden of proof to establish the propriety of class certification rests with the

---

[41] O.C.G.A. §48-13-51(a)(1)(B)(i). *See also,* Brinson Decl., Exhibit C (spreadsheet).

[42] *Expedia, Inc. v. City of Columbus, supra,* at 689-90.

[43] Although the tax rate may vary between 3% and 8% among the various jurisdictions of Class Members – *see, e.g.,* Brinson Decl., Exhibit C (spreadsheet) – the calculation method is the same throughout and the taxes due will be easily calculable during the Class claim submission process.

[44] *Klay v. Humana, Inc.,* 382 F.3d 1241, 1251 (11th Cir. 2004) (citation omitted). As noted above, a Florida district court has already certified a class involving similar claims as those asserted by Plaintiffs herein. *County of Monroe, supra.*

advocate of the class.'"[45]

**B.     Plaintiffs Satisfy the Rule 23(a) Requirements**

"To obtain class certification under Rule 23, the Plaintiffs must meet each of the requirements specified in Rule 23(a)[:] 'numerosity, commonality, typicality, and adequacy of representation.'"[46]

**1.     Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  "In order to demonstrate numerosity, plaintiffs need not prove that joinder is impossible; rather, plaintiffs 'need only show that it would be extremely difficult or inconvenient to join all members of the class.'"[47] "Plaintiffs 'generally must proffer some evidence or a reasonable estimate of the number of members comprising the purported class.' ...  The class simply must meet a 'minimum standard of definiteness which will allow the trial court to determine membership in the proposed class.'"[48]

"As a general rule, ... a class of more than forty members is adequate."[49] The *County of Monroe* court expressly found that "[t]he putative class ... of fifty-nine

[45] *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).
[46] *Babineau, supra*, at 1189-90.
[47] *In re Scientific Atlanta Inc. Sec. Litig.*, 571 F.Supp.2d 1315,1324 (N.D.Ga.2007).
[48] *In re Tri-State Crematory Litig.*, 215 F.F.D. 660, 689-690 (N.D.Ga. 2003).
[49] *County of Monroe, supra,* at 667 (citations omitted).

Florida counties ... is presumptively large enough to satisfy the numerosity requirement" and held that "[t]he class members' geographic dispersion also militates in favor of a finding that joinder is impracticable, as at least one other federal district has found in a similar action against these [OTC] Defendants."[50]

The Rule 23(a)(1) numerosity requirement is satisfied herein as some 259 Georgia cities and counties impose excise taxes that Defendants have not paid.[51]

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "The commonality requirement demands only that there be 'questions of law or fact common to the class.' ... 'Under the ... commonality requirement, a class action must involve issues that are susceptible to class-wide proof.'"[52]

"Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'"[53] Commonality is a "relatively light burden" which "does not require that all the questions of law and fact raised by the dispute be common'...."[54] The *County of Monroe* court further ruled that "[a]llegations of a common course of conduct by defendants

---

[50] *Id.* (citing *City of San Antonio, supra,* at *5).
[51] *See, e.g.,* Brinson Decl., Exhibit A (ordinances).
[52] *Vega, supra,* at 1268, 1270 (citations omitted).
[53] *Williams, supra,* at 1355.
[54] *County of Monroe, supra,* at 667 (quoting *Vega, supra,* and *Cox, supra*).

affecting all class members will satisfy the commonality requirement."[55]

The Southern District of Florida found common issues of law and fact where (a) class members all enacted ordinances pursuant to the Florida "Enabling Act;" (b) the ordinances all imposed collecting and remitting duties with respect to the tax regime; and (c) "all class members allegedly suffer the same type of injury as a result of a course of conduct by the Defendants-the 'merchant model' of room rental-that is common to all class members."[56]

In this case, similar (and multiple) common issues of law and fact exist, as noted above, including without limitation, the following:

- The subject taxes are all imposed pursuant to the Georgia Hotel Excise Tax Statute and related local ordinances promulgated thereunder;

- Defendants acted the same towards all members of the Class, including actually collecting taxes from the hotel guests;

- Defendants failed to properly identify the taxes charged and paid by guests;

- Defendants have not remitted monies collected as taxes to Class members;

---

[55] *Id.* (citations omitted).
[56] *Id. Accord, City of San Antonio, supra*, at 5 (commonality met where plaintiff claimed that OTCs' "policy and practice of paying hotel occupancy taxes based on the wholesale or net rate that they negotiate with the hotels, rather than the retail rates charged to the hotel occupants, violates all 175 municipal ordinances and results in ongoing monetary losses to all of the putative class members").

17

- Defendants should have collected excise tax revenue; and

- Each Class member suffered the same type of injury (loss of tax revenue).

### 3.    Typicality

"'A class representative must possess the same interest and suffer the same injury as the class members in order to be typical…. [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.' Although typicality and commonality may be related, [the Eleventh Circuit] distinguished the two concepts by noting that … commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class.'"[57]

The Eleventh Circuit further stated the typicality requirement as follows[58]:

> A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

"Like commonality, typicality is not a demanding test."[59] The *County of*

---

[57] *Vega, supra,* at 1275 (citations omitted).
[58] *In re Scientific Atlanta, Inc., supra,* at 1325-26 (citations omitted).
[59] *County of Monroe, supra,* at 668. "The [typicality] requirement may be satisfied 'even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative

*Monroe* court found typicality for the plaintiff's "tax, conversion, and unjust enrichment claims" as they were "premised upon the same alleged injury experienced by the other class members, and will be subject to class-wide proof."[60]

The same considerations apply here. The proposed Class representatives consist of both cities and counties, with ordinances typical of the Class as a whole that are to be applied pursuant to the Georgia Hotel Excise Tax Statute. Defendants have collected or should have collected the entire amount of excise taxes due to the named Plaintiffs and other Class members alike, but have not remitted the entire taxes. Plaintiffs thereby satisfy the typicality requirement of Rule 23(a)(3).

### 4.    Adequacy of representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This "requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will

---

parties and the other members of the class.'" *In re Tri-State, supra,* at 690.
[60] *County of Monroe, supra,* at 668 (citing *City of San Antonio, supra,* at *6). The District Court for the Middle District of Tennessee found typicality for the class representatives' theory "that tax on Merchant Model transactions is owed on the difference between the wholesale rate and the retail rate" was "the same as the theory underlying every other class members' claim" as, "[i]f the jury finds that the defendants have underpaid the City's hotel occupancy tax, it will necessarily mean that the defendants have underpaid taxes to the other class members." *City of Goodlettsville, supra,* at 530.

adequately prosecute the action.'"[61]

No substantial conflicts of interest exist between the named Plaintiffs/Class representatives and the rest of the Class. The named Plaintiffs allege that Defendants' conduct has harmed all members of the Class in the same way and thus their interests in recovering excise tax revenue from Defendants align with the similar interests of each other potential Class member.[62]

Plaintiffs also show that Class counsel will "adequately prosecute" this action and will otherwise protect the interests of the Class. Plaintiffs propose a team of six firms that have substantial involvement in complex litigation, class actions and issues of city and county government.[63] As stated in their Declarations:

- Certain of proposed Class Counsel are representing local governments in other OTC tax cases in other jurisdictions;

- Plaintiffs' counsel are familiar with the relevant law and have substantial experience in litigating class actions and other complex matters;

---

[61] *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

[62] *Accord, County of Monroe, supra*, at 668.

[63] *See,* Declaration of J. Anderson Davis in Support of Plaintiffs' Motion for Class Certification; Declaration of Robert C. Lamar in Support of Plaintiffs' Motion for Class Certification; Declaration of Walter J. Gordon in Support of Plaintiffs' Motion for Class Certification; Crongeyer Decl.; Declaration of Kevin A. Ross in Support of Plaintiffs' Motion for Class Certification; Declaration of David G. Archer in Support of Plaintiffs' Motion for Class Certification.

- Counsel have already taken discovery to investigate the Class claims; and

- Counsel have committed substantial resources to litigating this case.

Proposed Class counsel therefore satisfy the requirements for appointment of class counsel under Rule 23(g).

### C.    Plaintiffs Satisfy the Rule 23(b)(3) Requirements

Rule 23(b)(3) class plaintiffs must show "predominance" – "questions of law or fact common to class members predominate over any questions affecting only individual members" – and "superiority" – "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[64]

### 1.    Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." In deciding predominance, the Court considers the purposes of class action litigation, which include, without limitation, the promotion of "economies of time, effort, and expense."[65] "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[66]

---

[64] *Babineau, supra*, at 1189-90.
[65] *In re Tri-State, supra*, at 691 (citation omitted).
[66] *In re Scientific Atlanta, supra*, at 1336 (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

"Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action."[67] Common issues predominate if they directly "impact" every class member's effort to establish liability and entitlement to relief.[68] The court "must consider ... how the class will prove causation and injury and whether those elements will be subject to class-wide proof."[69]

In this case, the aforementioned common questions of law and fact "impact" each class member's claims, include without limitation, whether:

- Defendants as "merchants of record" purchase hotel rooms at "wholesale" rates and then re-sell them at the higher "room" or "retail rate";

- Defendants' "Merchant Model" transactions are taxable transactions under the pertinent Statute and ordinances;

- Defendants may be found to be tax "collectors" and/or to "furnish" or "provide" rooms pursuant to the Georgia Hotel Excise Tax Statute;

---

[67] *In re Tri-State, supra,* at 692 (citations omitted).
[68] *Williams, supra,* at 1357 (citations omitted).
[69] *Id.,* at 1358. "[T]he issue of liability ... includes not only the question of violation, but also the question of fact of injury, or impact.... In making the determination as to predominance, of utmost importance is whether 'impact' should be considered an issue common to the class and subject to generalized proof, or whether it is instead an issue unique to each class member, and thus the type of question [that] might defeat the predominance requirement of Rule 23(b)(3)." *Id.* (citation omitted).

- Defendants actually collected, but failed to remit, certain excise taxes; and

- Each Class member suffered the same injury (loss of tax revenue) as a result of Defendants' business practices that are the same throughout Georgia.

Common questions predominate over individual Class member issues as the threshold questions of Defendants' liability are subject to class-wide proof.[70]

### 2. Superiority

Rule 23(b)(3) further provides that a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." "The rule asks [the Court] to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'"[71]

The four factors listed in Rule 23(b)(3) are a "non-exhaustive" list of factors that relate to the issue of superiority:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the

---

[70] *Accord, City of Goodlettsville, supra,* at 532.
[71] *In re Tri-State, supra,* at 698-99 (citations omitted).

claims in the particular forum; and

(D) the likely difficulties in managing a class action.[72]

The *County of Monroe* court found superiority was demonstrated on multiple grounds, many of which are identical to the circumstances of this case:

1. The court had already found that the class representative "adequately stated" multiple claims for relief;

2. A number of discovery issues had been resolved;

3. The class members had been identified and could thus be easily notified;

4. "Given the number of issues subject to class-wide proof, there will be no unique difficulties in managing this case as a class action, beyond those inherent in complex cases"; and

5. "While some members of the class have independently commenced litigation against the Defendants…, they can easily and adequately protect that interest simply by opting out of the class."[73]

These considerations militate in favor of a finding that the proposed class action would be a superior means of litigating the foregoing issues, which are central to any of the Class members' claims.

---

[72] *See,* Advisory Committee Notes; *accord, Williams, supra,* at 1358.
[73] *County of Monroe, supra,* at 572. Accord, *City of Goodlettsville, supra,* at 534; *City of San Antonio, supra,* at *14-15.

**D.    A 23(b)(2) Class Is Appropriate Because Defendants Have Acted On Grounds Applicable to the Whole Class.**

Declaratory and injunctive relief for the Class is necessary and appropriate as Defendants' conduct is ongoing and declaratory and injunctive relief is necessary to secure future compliance with the Defendants' tax obligations:

> Certification under [Rule 23(b)(2)] is proper where "the party opposing the class has acted or refused to act on grounds generally applicable to the class" and "final injunctive relief or corresponding declaratory relief with respect to the class as a whole" is "appropriate."[74]

Here, Defendants have refused to remit excise taxes due all members of the Class, and all Class members are in need of declaratory and equitable relief. Where, as here, the monetary damages sought are "incidental" to the requested declaratory and injunctive relief, certification of the Class under Rule 23(b)(2) is appropriate.[75]

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify a Class of Plaintiffs and all other counties and municipalities in the State of Georgia that levy an excise tax on rooms, lodgings, and accommodations.

---

[74] *Heffner v. Blue Cross & Blue Shield of Ala.*, 443 F.3d 1330, 1339-40 (11th Cir. 2006).

[75] *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001) ("By incidental we mean damages that flow directly to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief . . . .").

Respectfully submitted,

**BRINSON ASKEW BERRY SEIGLER**
**RICHARDSON & DAVIS, LLP**

By:    /s/ Robert M. Brinson
      Robert M. Brinson
      GA Bar No. 082900
      City Attorney, Rome, GA
      /s/ J. Anderson Davis
      J. Anderson Davis

P.O. Box 5007
Rome, GA 30162
Telephone: 706-291-8853

**LAMAR ARCHER & COFRIN, LLP**

By:    /s/ Robert C. Lamar
      Robert C. Lamar
      GA Bar No. 431175
      /s/ David W. Davenport
      David W. Davenport
      GA Bar No. 205962

50 Hurt Plaza
Suite 900
Atlanta, Georgia 30303
Telephone: 404-577-1777
Facsimile: 404-577-9490

**CRONGEYER LAW FIRM, PC**

By:    /s/ John W. Crongeyer
      John W. Crongeyer, M.D.
      GA Bar No. 197267

2170 Defoor Hills Road
Atlanta, Georgia 30318
Telephone: 404-542-6205
Facsimile: 404-872-3745

**THE GORDON LAW FIRM**

By:   /s/ Walter J. Gordon
       Walter J. Gordon
       GA Bar No. 302488
       County Attorney, Hart County
       Georgia

P.O. Box 870
Hartwell, Georgia 30643
Telephone: 706-376-5418
Facsimile: 706-376-5416

**THE LAW PRACTICE
OF KEVIN ROSS, LLC**

By:   /s/ Kevin A. Ross
       Kevin A. Ross
       GA Bar No. 675184

3290 Northside Parkway, Suite 775
Atlanta, Georgia 30327
Telephone: 404-572-6622
Facsimile: 404-572-5909

**ARCHER & LOVELL, P.C.**

By:   /s/ David G. Archer
       David G. Archer
       GA Bar No. 021100
       City Attorney, City of Cartersville,
       Georgia

P.O. Box 1024
Cartersville, Georgia
Telephone: 770-386-1116
Facsimile: 770-382-7484

**ATTORNEYS FOR PLAINTIFFS**