## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

CITY OF ROME, GEORGIA, *et al.*,

      Plaintiffs,

    v.                                                  Civil Action  4:05-CV-249 (HLM)

HOTELS.COM, L.P., *et al.*,

      Defendants.

## REPLY BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR STAY

### Introduction

In response to Defendants' Motion for Stay, Plaintiffs make the following four general assertions:

(1)    "Delay would particularly be in Defendants' favor in this case as they continue to collect taxes owed to Plaintiffs and to unlawfully retain them."  (Pls' Resp. to Mot. to Stay, D.E. 372, at 2);

(2)    "A stay would delay this case for a long period of time."  (*Id.*);

(3)    Since Plaintiffs have asserted against the Defendants various common law and equitable claims, in addition to their claims under the Enabling Statute and local ordinances, "if a stay were granted, the Court and parties would potentially wait until sometime in 2012 just to <u>possibly</u> eliminate one of the five causes of actions [sic] asserted by the Plaintiffs herein."  (*Id.* at 7, emphasis in original);

and

(4)    "The City of Atlanta appeal will have no precedential value in this case in any event."  (*Id.* at 9.)

For the reasons set out below, each of these assertions is without merit.

### ARGUMENT AND CITATIONS OF AUTHORITY

I.    **Plaintiffs Have Presented No Evidence That Defendants Actually Collect Taxes From Travelers That Are Not Paid Over To Hotels For Remittance To The Plaintiffs.**

In the same manner as the cities of Atlanta and Columbus, Plaintiffs have

repeatedly alleged in their pleadings in this case that, "upon information and belief,"

Defendants "collect taxes owed to Plaintiffs," but "unilaterally retain them."  (Pls.'

Resp. at 2, D.E. 372.)  For example, in their Amended and Recast Complaint for

Class Action, they claimed that:

> Upon information and belief, Defendants charge and "actually collect" taxes from occupants based on the marked up room rates, but Plaintiff Class members only receive tax amounts based on the lower negotiated room rates.  Each Defendant then pockets the difference.
>
> * * * *
>
> In short, Defendants collect a greater amount in Excise Taxes from the general public than is remitted to the Plaintiffs.

(Am. Comp. at ¶¶ 48, 51, D.E. 88.)

Plaintiffs purport to rely upon these unfounded "pocket the difference"

allegations as a basis for demonstrating the prejudice that they will allegedly suffer

2

if this Court grants Defendants' Motion to Stay.  They speculate that, while a stay is in effect, Defendants will simply "continue to collect taxes owed to Plaintiffs and to unlawfully retain them."  (*Resp*. at 2.)  The allegations, however, are: (1) unsupported by any facts or documents of record in this or any other OTC case; and (2) simply untrue.

Plaintiffs themselves acknowledge that they have no facts to support the allegations.  Thus far, every Rule 30(b)(6) representative designated by a Plaintiff to testify as to their "information and belief" relating to these allegations has confirmed that they have no factual support for the claims.  For example, Plaintiff Augusta-Richmond County designated Robert Sherman, the Director of its License and Inspection Departments, as its representative to testify as to all of the allegations set out in the Amended Complaint (Sherman Dep. at 21, Ex. A).  During Mr. Sherman's Rule 30(b)(6) deposition, taken on October 15, 2009, counsel for the Expedia Defendants read to him the "pockets the difference" allegations set out in paragraphs 48 and 51 of the Amended Complaint, and then asked the following questions:

> Q:    Do you have any knowledge as to whether those allegations [in paragraph 48] are accurate?
>
> A     (by Mr. Sherman):  No
>
> \* \* \* \*

3

Q:     And you're not aware of any facts to support that [paragraph 51]?

A:     That's correct.

\* \* \* \*

Q:     [I]s it the contention of Augusta that it is seeking to get online travel companies to pay money that represents taxes it did ***not*** actually collect [from travelers]?

A:     No.

\* \* \* \*

Q:     So if they [Defendants] did not actually collect it, Augusta is not seeking to impose – make a claim for money that they didn't actually collect?

A:     That's correct.

(Sherman Dep. at 35, 54, Ex. A.)

Similarly, lead Plaintiff, City of Rome, designated Joseph F. Smith, its City Clerk for the last 20 years, as the representative most familiar with the allegations set out in the Complaint.  During his deposition, taken on October 19, 2009, Mr. Smith was read the specific allegations that Defendants actually collect more taxes from travelers than is remitted to Plaintiffs by the hotels:

Q:     Do you know of any facts to support these allegations?

A:     No.  I don't know how the OTCs operate specifically.

\* \* \* \*

4

Q:    And you've not seen any information that shows that [the Defendants] actually collect taxes that they don't pay over to the hotels?

A:    I have not.

* * * *

Q:    My question was, as the designated representative of Rome, isn't it correct that you're not aware of any facts or documents that support the contention that Defendants collect a greater amount in excise taxes from the general public than is remitted to the Plaintiffs? . . . So the answer is, you're not aware of any facts or documents to support the contention; is that correct?

A:    That's correct.

(Smith Dep. at 69-69, 75-76, Ex. B.)[1]

Independently, other Georgia courts that have considered the same issue and determined Plaintiffs' allegations are false. These courts have concluded, based on the evidence, that Defendants do not collect and "pocket" taxes on their marked-up rates.

---

[1]  On December 3, 2010, Plaintiff Cobb County made its designated corporate representative, Paul Foster, available for deposition for the first time. Like the other designated representatives, Mr. Foster testified that he was unaware of any facts or documents to suggest that any Defendants have ever collected taxes from travelers that Cobb County did not ultimate receive from the hotels or that Defendants "collect a greater amount in Excise Taxes from the general public than is remitted to the Plaintiffs." (Am. Compl. ¶ 51, D.E. 88.) When the final deposition transcript is prepared, Defendants will submit it to the Court.

When the City of Columbus sued Defendants Expedia, Inc. and Hotels.com, L.P. in Muscogee County Superior Court, it too generally alleged, but could not establish, that these two OTCs were collecting taxes from travelers that they were not paying over to the Columbus hotels for remittance to the City and were "pocketing the difference."  In his Order granting injunctions in those cases, Muscogee County Superior Court Judge Douglas Pullen made express factual findings that both of these OTCs "bases its recovery and/or remittance [of tax recovery charges] on the undisclosed wholesale amount it had previously negotiated with the hotel for the room" and not "on the amount charged the customer who books the room online and pays [the OTC] for the room." (*Hotels.com Inj.* at ¶ 34, Ex. C(1); see also *id.* at ¶ 26; *Expedia Inj.* at ¶¶ 26, 35, Ex. C(2).)  Indeed, the injunctions issued by the Court ordered these OTCs to ***begin*** basing their tax recovery charges on their higher marked-up rates.  (*Id.* at 64.)  On appeal, the Georgia Supreme Court did not disturb these factual findings.

In the *Atlanta* case, Fulton County Superior Court Judge Alford Dempsey reviewed the relevant contracts, considered the evidence of record, and concluded as follows:

> When a customer purchases a room from an OTC, the OTC transmits a reservation to the hotel and charges that customer's credit card for the room rate, plus applicable taxes and fees. ***The hotel occupancy tax amount is calculated based on the***

>           ***wholesale rate, as opposed to the full room rate.***  Upon receipt
>           of an invoice from the hotel, the OTC will remit to the hotel the
>           wholesale room rate, plus the applicable tax on that rate, and
>           retains all other funds collected from the customer.

(*Atlanta Final Order* at 2, emphasis added.)

There was no finding in the *Atlanta* case that any of the OTCs actually collected tax on their marked-up rates and "pocketed the difference."  Indeed, Judge Dempsey observed that, contrary to the factual finding upheld by the Georgia Supreme Court in the *Columbus* cases, most of the OTCs' contracts with Atlanta hotels "do not expressly provide that the OTC 'shall collect all applicable taxes from its customers,' as did the contracts in *Expedia, Inc.* [285 Ga.] at 684-685," (*id.* at 4), and none of the contracts expressly requires an OTC to collect excise taxes based on the OTC's marked-up rate.  Therefore, in order to justify imposing a prospective injunction requiring the OTCs to begin collecting taxes on their marked-up rates (a ruling the OTCs have appealed), Judge Dempsey had to alter the express terms of the contracts by "declar[ing] void as for an illegal purpose those provisions in the OTCs' contracts that provide for the under remittance of hotel occupancy taxes."  (*Id.* at 6.)

But since he had concluded that the OTCs were not "innkeepers" or hotel "operators" subject to the Enabling Statue and the Atlanta ordinance, and since the OTCs had not previously collected from travelers more in taxes than were being

paid over to the hotels, Judge Dempsey concluded "that the City has no remedy available under the claims asserted with regard to back taxes potentially owed by Defendants." (*Id.* at 7.)

Outside of Georgia, the U.S. District Court for the Northern District of Ohio recently granted Defendants' motion for summary judgment on plaintiffs' (various cities in Ohio) remaining claim that they were entitled to amounts collected by Defendants that were "denominat[ed] as a sales and/or bed tax" but not remitted to the plaintiffs. The district court had previously determined that Defendants were not directly liable for collecting guest taxes under the applicable ordinances. In its Order, the district court held that there was "no evidence that Defendants" had "pocket[ed] amounts charged as taxes." *See, City of Findlay v. Hotels.com L.P. et al*, United States District Court for the Northern District of Ohio, Western Division, Civil Action No. 3:05-CV-7443 (Nov. 18, 2010) (Ex. D).

Plaintiffs cannot show that Defendants are actually collecting from travelers greater amounts in excise taxes than are being remitted by the hotels to Plaintiffs, because such evidence does not exist. Consequently, they can show no prejudice that they might suffer as a result of a temporary stay of this action. Even if this Court ultimately determines that Defendants are liable to Plaintiffs to pay back taxes that they should have been collecting from travelers, but did not actually

collect, the Court can enter a judgment against Defendants for the amount of taxes it determines to have been under-collected and under-remitted.[2]  A stay, pending the Supreme Court's review of this issue, prejudices no one.

## II.    Plaintiffs' Response Overstate Length Of Delay Because, Under The "Two-Term" Rule, The Georgia Supreme Court Must Issue Its Ruling In The *Atlanta* Appeal No Later Than July 2011.

Contrary to Plaintiffs' speculations, the Georgia Supreme Court is bound by a definitive schedule for issuing decisions on appeals.  Consequently, granting a temporary stay pending the Supreme Court's ruling in the *Atlanta* appeal will not materially delay the final resolution of this case.  If the Supreme Court dockets the case by December 16, 2010,[3] then the appeal will be assigned to its September Term.  And under the "Two-Term" Rule mandated by the Georgia Constitution, Art. VI, § IX, Para. II, the Supreme Court must dispose of all September term appeals by no later than 15 days before the end of its April term, which expires on July 31, 2011.  Thus, the Supreme Court's decision in the *Atlanta* appeal would necessarily be issued by no later than July 16, 2011.  And even if one of the parties thereafter files a motion for reconsideration, the Supreme Court must rule on that

---

[2]  Alternatively, if the Court agrees with Judge Dempsey that OTCs are not subject to and have no obligations under the Enabling Statute, then Plaintiffs would not be entitled to recover back taxes or damages from Defendants under any legal theory.

[3]  The appeal record and trial transcript were submitted to the Georgia Supreme Court for docketing on November 22, 2010.

motion by the end of the term on July 31, 2001.  *See* O.C.G.A. § 15-2-4.  Plaintiffs'

speculation that they might have to wait until 2012 for a resolution is completely

unfounded and contrary to the Georgia Code and Constitution.

Indeed, deferring to the Georgia Supreme Court's ruling would adhere to

this Court's continued effort to follow Georgia law, conserve judicial resources,

and would likely expedite the final resolution of this case.  While Plaintiffs

complain about the prior stays issued in this case, the Court has issued these stays

due primarily to Plaintiffs' actions and inactions.  (*See, e.g.*, D.E. 202, April 5,

2007 Order (determining the "most appropriate course of action" would be to stay

all discovery until ruling on Defendants' Motion for Summary Judgment based on

Plaintiffs' failure to exhaust administrative remedies); D.E. 214, May 10, 2007

Order (determining stay is warranted based on Plaintiffs' failure to assess

Defendants before filing lawsuit); D.E. 259, September 8, 2008 Order (denying

Plaintiffs' Motion to Lift Stay because the Georgia Supreme Court's decision in

the Atlanta case would impact Court's consideration of issues raised by Plaintiffs);

D.E. 320, December 15, 2009 Order (granting *joint* motion to stay pending parties'

mediation efforts)).  Similar to the earlier stays, a temporary stay granted until the

Georgia Supreme Court rules on issues of state taxation would save judicial

resources and provide guidance to a federal court faced with similar issues.

Moreover, if this Court decided not to issue a stay, allowed the parties to proceed in completing discovery and briefing the Motion for Class Certification, and if it then conducted an evidentiary hearing and ruled on the certification issue, and then allowed the parties to prepare and submit cross Motions for Summary Judgment as to the core legal issues in this case, it is highly unlikely that the parties could complete all of these activities and the Court could address and make a final ruling on the summary judgment motions before July 2011.  The Court certainly could not conduct and complete a jury trial on all issues by that time.  And even if it could, the parties could then still appeal the Court's decision to the Eleventh Circuit, which would easily consume yet another 18 months.  Moreover, under this scenario, there is a possibility that this Court and/or the jury and/or the Eleventh Circuit might interpret the applicable Georgia tax statutes and ordinances in a manner inconsistent with the Georgia Supreme Court's final decision in the *Atlanta* appeal, thereby increasing, rather than resolving, the uncertainties facing the parties in this case.

On the other hand, if this Court grants the temporary stay and the Georgia Supreme Court finally resolves the relevant issues of Georgia law no later than July 2011, then that decision from the State's highest court could potentially affect and even resolve the issues raised in this case.

11

A brief stay is therefore warranted.

**III.    Plaintiffs' Claims Are Virtually Identical To Those Already Adjudicated In The *Atlanta* Case.**

Plaintiffs suggest that the Final Order in the *Atlanta* case was nothing more than a "partial grant and partial denial of motions for summary judgment" (*Pls' Resp.* at 9) and that, since Plaintiffs have asserted various "alternative" claims for relief, the *Atlanta* appeal would at most "possibly eliminate one of five causes of actions [sic.] asserted by the Plaintiffs herein." (*Id*. at 7, emphasis in original.) Again, Plaintiffs completely misread the Final Order in the *Atlanta* case.

To examine the validity of this argument, one must compare the claims raised by Plaintiffs in this case against those raised in the *Atlanta* case to determine whether and to what extent they overlap.

In their Amended Complaint filed in this case on June 8, 2006, Plaintiffs alleged that Defendants "are online sellers and/or resellers of hotel rooms to the general public" and that they "sold and/or provided hotel rooms to the public, but failed to pay taxes due and owing to the Plaintiff and Plaintiff Class members on these transactions." (*Am. Compl*. at ¶ 44, D.E. 88.) They further alleged that, under the Enabling Statute, Defendants are hotel "operators" and the "amount of the transient occupancy and/or excise tax is correctly calculated as a percentage of the price each consumer occupant pays each Defendant operator for a hotel room.

(*Id*. at ¶ 45.)  And, they alleged, "Defendants collect a greater amount in Excise taxes from the general public than is remitted to the Plaintiffs."  (*Id.* at ¶ 51.)  But, according to Plaintiffs, "Defendants are liable to the County and Municipal Class Plaintiffs for said Excise Taxes whether they charge and collect said taxes from the ultimate occupier of the hotel rooms or not."  (*Id.* at ¶ 46.)

Plaintiffs further claimed that they have "sustained damages arising from Defendants' violations of law," and they specifically seek recoveries under the Enabling Statute and the related ordinances (Count I) and under Georgia's Uniform Deceptive and Unfair Trade Practices Act (Count II), damages under the "alternative" common law theories of conversion (Count III) and unjust enrichment and constructive trust (Count IV), and a declaratory judgment (Count V).  For relief, they pray for a money judgment against Defendants for an unspecified amount of Excise Taxes, penalties and interest, disgorgement of previous retained Excise Taxes, a "declaratory judgment determining Defendants' business practices to be illegal, deceptive, unfair and unlawful business practices," and injunctive relief requiring Defendants' future compliance with the Excise Tax laws.  (*Id.* at p. 27.)

Atlanta's Complaint (Exhibit E attached hereto), filed against these same Defendants on March 29, 2006, asserted virtually identical allegations and claims.

It similarly alleged that "Defendants are third-party sellers and resellers of Rooms located within the City that are subject to the Hotel/Motel Tax." (*Id.* at ¶ 2.) As alleged "hotel operators" under the Enabling Statute and Atlanta ordinance, the "Defendants are duty bound to collect this full amount from their customers on behalf of the City, and then to remit all taxes collected to the City." (*Id.* at ¶¶ 2, 38-41.) Moreover, according to Atlanta, "Defendants actually do collect an amount, described to their customers as 'taxes and fees,' that is sufficient to cover the Hotel/Motel Tax and all other applicable taxes on the full Room price." (*Id.*) And, like Plaintiffs in this case, Atlanta accused Defendants of "pocketing a significant portion of the taxes the customers have paid." (Id. at ¶ 5.)

Atlanta, like Plaintiffs here, sought injunctive relief (Count I), a declaratory judgment (Count II), damages in the form of back taxes, penalties and interest arising out of the Defendants' alleged violations, as hotel "operators," of the Enabling Statute and the Atlanta ordinance (Count III), conversion (Count IV), unjust enrichment (Count V), constructive trust (Count VI) and an equitable accounting (Count VII). In its First Amended Complaint, filed on October 23, 2009 (Exhibit F attached hereto), Atlanta added new claims for punitive damages

(Count VIII) and attorneys fees (Count IX), and it made specific claims that the OTCs were "third party tax collectors."[4]

In other words, in addition to making claims for back taxes, penalties and interest under the Enabling Statute and its ordinance, Atlanta asserted the same "alternative" common law, injunctive and declaratory judgment claims that Plaintiffs now seek to pursue in this case. Importantly, Judge Dempsey expressly addressed and resolved ***all*** of Atlanta's claims, including those relating to unjust enrichment (*Atlanta Final Order* at 6-7), money had and received (*id*. at 7), constructive trust (*id.*) and equitable accounting. (*Id.*) Moreover, to avoid any misunderstanding that his AMENDED FINAL ORDER might be read as something less than a final ruling on all asserted issues and claims, Judge Dempsey added an express finding "that the City has no remedy available under the claims asserted with regard to back taxes potentially owed by Defendants." (*Id*.) He then explained that he inserted this sentence "to clarify that this Order is intended as a final order on all claims raised in this case." (*Id.*, n 3.)

---

[4] While Plaintiffs suggest Defendants' Motion to Stay is untimely (*Pls.' Resp.* at 10-11), Plaintiffs filed a Motion to Amend their Complaint on November 1, 2010, seeking to add for the first time this "third party tax collectors" claim that they had previously acknowledged in filings more than 17 months ago (D.E. 356). Defendants' Motion to Stay was filed contemporaneously with their Responses to Plaintiffs' untimely Motion to Amend and shortly after the parties broke off settlement discussions (D.E. 363 and 346).

Since the Georgia Supreme Court will now be reviewing in the *Atlanta* appeal a final decision that purports to address all of the tax-based, common law, declaratory judgment and equitable claims that are being asserted by Plaintiffs in this case, the arguments that: (1) the *Atlanta* appeal "is not necessary for instruction as to other issues this Court will face in this case" (*Pls' Resp.* at 6); or that it (2) "will have no precedential value in this case" (*id.* at 9); or that (3) "given past history, it is most likely that the Supreme Court once again find it unnecessary to determine the OTCs' status as 'operators' under the Enabling Statute and ordinances" (*id.*), are simply without merit. While no one can predict with certainty how the Supreme Court will ultimately decide the *Atlanta* appeal, it is highly likely that the Court's final decision will be at least instructive to this Court as to the very issues raised in this case. And since this decision must be issued by no later than July 2011, prudence dictates that this Court should stay any substantive rulings in this case at least long enough to see how the State's highest court addresses and perhaps resolves these pending issues.

## IV.   The Two Cases Are In The Same Procedural Posture.

Plaintiffs also argue that this Court should ignore the *Atlanta* appeal because "the City of Atlanta has admittedly never pursued any administrative remedies" and "[w]e are all left to speculate what role this important factual distinction

16

played in the trial court's decision." (*Id.* at 10.)  This argument regarding the alleged distinctions between the two cases fails for at least two reasons.  First, some Plaintiffs in this case have likewise failed to pursue ***any*** administrative remedies (*e.g.*, Plaintiffs August-Richmond County, Clayton County and Hart County and, if the Court allows them to be added as parties, Chatham County and the City of Savannah) and no Plaintiff has made a final estimate or assessment against all of the Defendants.  Accordingly, Plaintiffs in this case, like the City of Atlanta, have failed to exhaust their respective administrative requirements.

In any event, Judge Dempsey never had to address the issue of exhaustion in the *Atlanta* case because it was rendered moot (as it would be in this case) when he concluded that the OTCs are not subject to the Enabling Statute or Atlanta's ordinance.  Since those laws do not apply to the OTCs, the administrative requirements set out within those laws similarly did not apply.

In other words, Plaintiffs have raised a distinction without a difference.

## V.    Plaintiffs Have Access To All Discovery And Evidence Produced In The Atlanta Case

Finally, Plaintiffs complain that they do not have access to "the vast majority of the evidence which the trial court considered as to both motions [in the *Atlanta* case], because they have consistently been <u>under seal</u>." (*Pls' Resp*. at 9, emphasis

in original.)[5]  Once again, their grievance is without merit.  Pursuant to a discovery

protocol issued by this Court on August 26, 2009 (D.E. 293), Defendants made

available to Plaintiffs' counsel, among other things, ***all*** of the discovery produced

by the parties in the *Atlanta* case.  Accordingly, Plaintiffs already have access to all

of "the evidence which the trial court considered as to both motions."  Moreover,

attached hereto as Exhibit G are copies of the summary judgment and reply briefs

filed by the OTCs in the *Atlanta* case, which lay out the arguments and legal

theories asserted by the OTCs.  The City of Atlanta filed under seal its separate

summary judgment motion, because it referenced confidential and proprietary

information relating to, among other things, the various business models and

transactional data used by the various Defendants.  Since the OTCs' brief in

response to this motion also necessarily referenced confidential information, it too

was filed under seal.

Under the terms of the protective order entered in the Atlanta case, these

pleadings cannot be provided to non-parties without the consent of all parties

involved in the Atlanta case.  Plaintiffs fail to inform the Court that counsel for

---

[5]  Even though they have had access to the discovery produced in the Atlanta case, Plaintiffs inappropriately claim that the filing of confidential and proprietary materials under seal pursuant to a protective order in a case involving fierce business competitors  is somehow "a practice which has been severely abused by the Defendants."  (*Pls' Resp.* at 9, n 8.).

Defendants has communicated to Plaintiffs' counsel that, as long as Atlanta's counsel give their consent, Defendants would not object to Plaintiffs' attorneys gaining access to copies of these sealed pleadings filed in the *Atlanta* case.

### Conclusion

For the reasons set out herein, Defendants respectfully move this Court to stay further substantive rulings in this case until the Georgia Supreme Court issues its final ruling in the *Atlanta* appeal.

Dated:  December 6, 2010          /s/ E. Kendrick Smith
                                  E. Kendrick Smith
                                    (Georgia bar No. 656725)
                                  Robin A. Schmahl
                                    (Georgia Bar No. 629440)
                                  **JONES DAY**
                                  1420 Peachtree Street, Suite 800
                                  Atlanta, GA  30309
                                  Telephone: (404) 521-3939
                                  Facsimile:  (404) 581-8330
                                  e-mails:     eksmith@jonesday.com
                                               raschmahl@jonesday.com

                                  *Counsel for Defendants*
                                  *Hotels.com, L.P.; Hotels.com GP, LLC;*
                                  *Hotwire, Inc.; Expedia, Inc.; and*
                                  *TravelNow.com, Inc.*

                                  - and -

/s/ Edward Hine, Jr.
Edward Hine, Jr.
  (Georgia Bar No. 355775)
**EDWARD HINE, JR., P.C.**
111 Bridgepoint Plaza
Suite 300, P.O. Box 5511
Rome, GA  30161
Telephone: (706) 291-2531
Facsimile:  (706) 291-1301
e-mail:       ehinejr@bellsouth.net

*Counsel for All Defendants*

- and -

Elizabeth B. Herrington
  (admitted *pro hac vice*)
Jeffrey A. Rossman
  (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
227 West Monroe Street
Chicago, IL  60606
Telephone: (312) 984-7763
Facsimile:  (312) 984-7700
e-mail:       eherrington@mwe.com

*Counsel for Defendants*
*Orbitz, Inc.; Orbitz, LLC; Internetwork*
*Publishing Corp. (d/b/a Lodging.com);*
*CheapTickets, Inc.; and Cendant Travel*
*Distribution Services Group, Inc.*

- and -

Karen L. Valihura, Esq.
  (admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM  LLP**
One Rodney Square
P.O. Box 636
Wilmington, DE  19899
Telephone: (302) 651-3000
Facsimile:  (302) 651-3001
e-mail: kvalihur@skadden.com

Darrel J. Hieber, Esq.
  (admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM  LLP**
300 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 687-5220
Facsimile: (213) 687-5600
e-mail: dhieber@skadden.com

Celso M. Gonzalez-Falla, Esq.
  (admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**
1000 Louisiana, Suite 6800
Houston, TX  77002
Telephone: (713) 655-5100
Facsimile:  (713) 655-3200
e-mail: Celso.Gonzalez-Falla@skadden.com

***Counsel for Defendants priceline.com
Incorporated, Lowestfare.com Incorporated
and Travelweb LLC***

- and -

Marcus G. Mungioli
    (admitted *pro hac vice*)
**KELLY, HART & HALLMAN, LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile:  (817) 878-9280
e-mail: marcus.mungioli@khh.com

***Counsel for Defendants Site59.com, LLC; Travelocity.com, Inc.; and Travelocity.com, L.P.***

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

The undersigned hereby certifies that the within and foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR STAY** was prepared using Times New Roman, 14-point font, in accordance with Local Rule 5.1C.

This 6th day of December, 2010.

/s/ E. Kendrick Smith
E. Kendrick Smith
  (Georgia Bar No. 656725)
*An Attorney for Defendants
Hotels.com, L.P.; Hotels.com GP,
LLC; Hotwire, Inc.; Expedia, Inc.;
and TravelNow.com, Inc.*

**JONES DAY**
1420 Peachtree St., Suite 800
Atlanta, GA  30309
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the within and foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR STAY** was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to the following counsel of record:

**Brinson Askew Berry Seigler Richardson & Davis, LLP**
Robert M. Brinson  (bbrinson@brinson-askew.com)
J. Anderson Davis  (adavis@brinson-askew.com)

**Vroon & Crongeyer**
John W. Crongeyer  (jcrongeyer@vclawfirm.com)
Bryan A. Vroon  (bvroon@vclawfirm.com)

**Murray & Murray Co. L.P.A.**
John T. Murray  (jotm@murrayandmurray.com)

**The Law Practice of Kevin A. Ross, LLC**
Kevin A. Ross  (kross@krosspa.com)

**Lamar Archer & Cofrin, LLP**
David W. Davenport  (dwdavenport@laclaw.net)
Robert C. Lamar  (rclamar@lackaw.net)

**The Gordon Law Firm**
Walter J. Gordon  (wgordon@hartcom.net)

**Archer & Lovell, P.C.**
David G. Archer  (dgapc@bellsouth.net)

**Edward Hine, Jr., P.C.**
Edward Hine, Jr.  (ehinejr@bellsouth.net)

**Jones Day**
James P. Karen  (jkaren@jonesday.com)
E. Kendrick Smith  (eksmith@jonesday.com)
Robin A. Schmahl  (raschmahl@jonesday.com)

**McDermott Will & Emery LLP**
Elizabeth B. Herrington  (eherrington@mwe.com)
Jeffrey A. Rossman  (jrossman@mwe.com)
Lazar P. Raynal  (lraynal@mwe.com)

**Skadden, Arps, Slate, Meagher & Flom LLP**
Karen L. Valihura  (kvalihur@skadden.com)
Celso M. Gonzalez-Falla  (Celso.Gonzalez-Falla@skadden.com)
Ralph K. Herndon, Sr.  (Randolph.Herndon@skadden.com)

**Kelly Hart & Hallman LLP**
Marcus G. Mungioli  (marcus.mungioli@khh.com)

This 6th day of December, 2010.


/s/ E. Kendrick Smith
E. Kendrick Smith
  (Georgia Bar No. 656725)
*An Attorney for Defendants*
*Hotels.com, L.P.; Hotels.com GP,*
*LLC; Hotwire, Inc.; Expedia, Inc.;*
*and TravelNow.com, Inc.*

**JONES DAY**
1420 Peachtree St., Suite 800
Atlanta, GA  30309
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330