## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| City of Rome, Georgia; Hart County, Georgia; City of Cartersville, Georgia; City of Hartwell, Georgia; Cobb County, Georgia; City of Cedartown, Georgia; City of Dalton, Georgia; Gwinnett County, Georgia; Fulton County, Georgia; City of Rockmart, Georgia; City of East Point, Georgia; City of Warner Robins, Georgia; City of Tybee Island, Georgia; Dekalb County, Georgia; City of College Park, Georgia; City of Alpharetta, Georgia; City of Macon, Georgia; Augusta-Richmond County, Georgia; Clayton County, Georgia; And All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> Hotels.com, L.P.; Hotels.com GP, LLC; Hotwire, Inc.; Cheap Tickets, Inc.; Cendant Travel Distribution Services Group Inc.; Expedia, Inc.; Internetwork Publishing Corp. (d/b/a lodging.com); Lowest Fare.com, Inc.; Orbitz, Inc.; Orbitz, LLC; Priceline.com, Inc.; Site59.com, LLC; Travelocity.com, Inc.; Travelocity.com, LP; Travelweb, LLC; Travelnow.com, Inc.; Onetravel, Inc. (d/b/a onetravel.com); And Does 1 through 1000, Inclusive, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br><br> ) ) <br> ) ) <br> ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. File No. 4:05-CV-249 (HLM) |

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

263475

## **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT.....................1

II.     PLAINTIFFS HAVE PROPERLY DEFINED THE CLASS.................6

III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES....................... 10

IV.     THE NAMED PLAINTIFFS' INTERESTS ARE NOT
        ANTAGONISTIC TO OTHER PUTATIVE CLASS MEMBERS ......... 13

V.      SUFFICIENT COMMONALITY AND TYPICALITY
        EXISTS FOR CERTIFICATION    ...............................................14

        A.     Voluntary Insertion Claim    ...........................................14

        B.     Statutory Liability Claim..................................................... 18

VI.     CERTIFICATION UNDER RULE 23(B)(2) IS PROPER....................21

VII.    CALCULATION OF DAMAGES DOES NOT PRECLUDE
        PREDOMINANCE UNDER RULE 23(B)(3)..................................21

VIII.   OTHER CLAIMS ARE PROPER FOR CLASS RESOLUTION............23

IX.     CONCLUSION.........................................................................25

# TABLE OF AUTHORITIES

## Cases

*Allapattah Servs., Inc.v. Exxon Corp.*
333 F.3d 1248 (11th Cir. 2003)..............................................................23

*Buford v. H & R Block, Inc.*
168 F.R.D. 340 (S.D.Ga.1996)..............................................................9

*Castano v. Amer. Tobacco Co.*
84 F.3d 734 (5th Cir. 1996)..............................................................24

*City of Atlanta v. Hotels.com, L.P.*
285 Ga. 231 (2009)..............................................................2, 9, 10

*City of Charleston v. Hotels.com, L.P.*
520 F.Supp.2d 737 (D.S.C. 2007)..............................................................9

*City of Gallup, New Mexico v. Hotels.com, L.P.*
No. 07-cv-00644 JEC/RLP (D.N.M. Jul. 7, 2009)..........................2, 3, 4, 5, 21

*City of Rome v. Hotels.com, L.P.*
Order, May 10, 2007, 2007 WL 6887932 [Doc. 214].............................*passim*

*City of Rome v. Hotels.com, L.P.*
Order, July 10, 2009 [Doc. 272]..............................................................*passim*

*City of Goodlettsville, Tennessee v. Priceline.com, Inc.*
267 F.R.D. 523 (M.D.Tenn. 2010) .............................................................*passim*

*City of Goodlettsville, Tenn. v. Priceline.com, Inc.*
605 F.Supp.2d 982 (M.D.Tenn. 2009)..............................................3, 5, 10, 12

*City of San Antonio v. Hotels.com*
2008 WL 2486043 (W.D.Tex. May 27, 2008) .....................1, 17, 18, 20, 21, 22

*County of Monroe, Florida v. Priceline.com, Inc.*
265 F.R.D. 659 (S.D.Fla. 2010)……………………………………………..*passim*

*Expedia, Inc. v. City of Columbus*
285 Ga. 684 (2009)……………………………………..…………………*passim*

*Heffner v. Blue Cross and Blue Shield of Ala., Inc.*
443 F.3d 1330 (11th Cir. 2006)…………………………………………….24

*Hotels.com, L.P. v. City of Columbus*
286 Ga. 130 (2009)…………………………………………………………....5

*In re Piedmont Office Trust, Inc. Sec. Litig.*
264 F.R.D. 693 (N.D. Ga. 2010)…………………………………………….21

*In re Polypropylene Carpet Antitrust Litig.*
178 F.R.D. 603 (N.D.Ga. 1997)…………………………………………….9

*Klay v. Humana, Inc.*
382 F.3d 1241 (11th Cir. 2004)…………………………………...……….22

*Priceline.com, Inc. v. City of Anaheim*
100 Cal.App. 4th 1130 (Cal.Ct.App. 2010)…………………………………..11

*Murray v. Auslander*
244 F.3d 807 (11th Cir. 2001)……………………………………………..21

*New Hampshire v. Maine*
532 U.S. 742, 749-50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)…………………..6

*Sears Roebuck v. Parsons*
401 S.E.2d 4 (Ga. 1991)…………………………………………………… 11

*Travelscape, LLC v. S.C. Dept. of Revenue*
_ S.E.2d _, 2011 WL 149864 at *6 (S.C. 2011)………………………………..17

*Velez v. Novartis Pharms. Corp.*
244 F.R.D. 263 (S.D.N.Y. 2007)…………………………………… 23, 24

## **Statutes**

O.C.G.A. § 48-8-2(3)(D)...............................................................................20

O.C.G.A. § 48-8-2(3)(G)...............................................................................20

O.C.G.A. § 48-13-50......................................................................2, 6, 8

O.C.G.A. § 48-13-51(a)(1)(B)(i)..............................................14, 16, 20

O.C.G.A. § 48-13-51(a)(1)(B)(ii) .............................................2, 16, 20

O.C.G.A. § 48-13-51(b)(2) .............................................................20

## **Rules**

Fed.R.Civ.P. 23 .......................................................................12, 24

Fed.R.Civ.P. 23(b)(2)...............................................................21

Fed.R.Civ.P. 23(b)(3)...............................................13, 21, 22, 23

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT.

In the face of this Court's prior orders, the rulings of the Supreme Court of Georgia and four other District Courts' decisions granting class certification in hotel excise tax cases, Defendants have ignored past precedents and argued facts on the merits that are irrelevant to class certification. While Plaintiffs too are eager to reach the merits of their claims, the issue for this Court at this time is class certification. The legal precedents and relevant facts fully support certification of the Class proposed by Plaintiffs.

Defendants' Response Brief[1] is remarkable for its thinly-veiled attacks upon this Court's prior orders in this case[2] and the complete absence of discussion, or even acknowledgement, of the earlier orders of other District Courts soundly rejecting Defendants' positions asserted in their Brief. Defendants' Brief mostly regurgitates similar arguments made to District Courts in the *San Antonio, Goodlettsville*, and *Monroe County* cases.[3] Yet, even as long as their Brief is,[4]

---

[1] Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification (hereafter "Defendants' Brief") [Doc. 393].

[2] *See especially,* Order, May 10, 2007 ("2007 Order"), 2007 WL 6887932 [Doc. 214]; Order, July 10, 2009 ("2009 Order") [Doc. 272].

[3] *City of San Antonio v. Hotels.com*, 2008 WL 2486043 (W.D.Tex. May 27, 2008); *City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523 (M.D.Tenn. 2010); *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659 (S.D.Fla. 2010).

Defendants do not respond at all to Plaintiffs' citation of the aforementioned cases or address the other District Court opinion granting class certification[5], nor do they offer any explanation as to why those courts' analyses and decisions do not counsel in favor of certifying the class here.

Instead, Defendants misrepresent the tasks required of this Court to grant certification and assert the alleged preclusive effect of the doctrine of exhaustion of administrative remedies upon certification, which contentions this Court,[6] the Georgia Supreme Court,[7] and the District Courts in *Goodlettsville* and *Monroe County* have rejected. In reality, the factual analysis necessary for class certification is simple and the relevant facts undisputed:

- At least 259 cities and counties in Georgia have enacted hotel excise tax ordinances pursuant to O.C.G.A. §48-13-50, *et seq.* (the "Enabling Statute");[8]

---

[4] *See* Defendants' Brief and Defendants' Attach. B, H, I [Doc. 393]; (See also Plaintiffs' Objections to Defendants' Attachments B, H and and I (attached hereto as Exhibit "1").

[5] *City of Gallup, N. M. v. Hotels.com, L.P.*, No. 07-cv-00644 JEC/RLP (D.N.M. Jul. 7, 2009) (Plaintiffs' Memorandum Exhibit C [Doc. 366-4]).

[6] *See, e.g.,* 2009 Order [Doc. 272].

[7] *City of Atlanta v. Hotels.com, L.P.*, 285 Ga. 231 (2009).

[8] *See, e.g.,* Declaration of Robert M. Brinson in Support of Plaintiffs' Motion for Class Certification ("Brinson Decl."), at ¶5 [Doc. 366-12]; Brinson Decl., Ex. A (disk containing Georgia ordinances) [Doc. 367].

263484

- In all instances, the hotel excise tax is upon the consumer[9] and is to be collected by the entity transacting with the consumer;[10]

- Defendants have admitted that they have interjected themselves into this taxation scheme by becoming the merchant of record with the consumer, collecting hotel excise taxes from the consumer and remitting part of such taxes to the hotels for payment to the governing authority;[11] and

- Although terms used in the local ordinances may vary in certain immaterial instances,[12] it is clear in each ordinance that the tax is to be levied on the full consideration paid by the consumer to occupy the room, not the net rate paid by the Defendants to the hotels. The Georgia Supreme Court and some District Courts have so ruled.[13]

---

[9] *See,* O.C.G.A. §48-13-51(a)(1)(B)(ii): "Any tax … is also imposed upon every person or entity who is a motel or hotel guest and who receives a room…."

[10] *See, Id.,* "The person or entity collecting the tax from the hotel or motel guest shall remit the tax to the governing authority imposing the tax…."

[11] *See* discussion, *infra,* at n.30.

[12] *See* Brinson Decl., Ex. C (listing operative terms of ordinances [Doc. 366-14]; Supplemental Declaration of Robert M. Brinson in Support of Plaintiffs' Motion for Class Certification ("Brinson Supp. Decl.") (attached hereto as Exhibit "2").

[13] *See, Expedia, Inc. v. City of Columbus,* 285 Ga. 684, 689-90 (2009) ("the applicable tax rate is applied to the price Expedia demands from the consumer for the right to occupy the hotel room and not the price Expedia agrees to pay the hotel for the room"). *See also, City of Goodlettsville, Tenn. v. Priceline.com, Inc.,* 605 F.Supp.2d 982, 998 (M.D.Tenn. 2009) ("the entire amount charged by the defendants [is] subject to the tax"). *Accord, City of Gallup, supra,* at 5.

263484                                          3

- Everywhere Defendants book rooms under their "merchant model", not just in Georgia but anywhere in the United States, they disclose to customers a retail room rate, but only remit taxes to the state and local governments on the wholesale or net rate. That is their undisputed national business practice.

This Court does not need to review hundreds of contracts between Defendants and their hotel "partners" to determine whether certification is proper. *See, City of Gallup,* at 8. The above-listed core <u>relevant</u> facts and <u>material</u> terms are not in dispute. Defendants all operate under their "merchant model" business practice, where Defendants are the exclusive entities dealing with the consumer in making the reservation, collecting the consideration for the room rental and taxes from the consumers, and then remitting taxes to the hotels for payment to the governing authorities. Plaintiffs have provided the Court samples of Defendants' contracts with hotels to verify this point, and Defendants' own brief and Attachments[14] underscore the uniformity of the business practice. Under these facts, the Georgia Supreme Court has held that Defendants are required to collect

---

[14] *See,* Defendants' Brief, at 9-10: "Most OTCs transact business using what is referred to as the 'Merchant Model'.... Under the Merchant Model, the total amount the OTC charges the traveler's credit card has two components.... The second component – sometimes referred to as 'taxes and fees' or the 'tax recovery charges and service fees' – covers the estimated taxes that the hotel will owe on the Rent.... After the traveler occupies the room, the hotel charges the OTC for the Rent, the applicable taxes due on the Rent...." *See also,* Attach. B, H and I.

and remit hotel excise taxes upon the entire consideration paid for occupancy of the room to the local governing authorities. *City of Columbus, Accord,* 2009 Order at 19-20.

Finally, Defendants' resurrected "failure-to-exhaust-administrative remedies" arguments fly in the face of the rulings of this Court,[15] the Georgia Supreme Court,[16] and the cited District Courts on the issue.[17] Pretermitting whether the administrative procedures even apply to this situation,[18] this Court thought their exercise might aid the Court and stayed the proceedings to allow Plaintiffs to pursue the administrative process. 2007 Order. Numerous Plaintiffs attempted to audit and assess Defendants for taxes allegedly owed, but Defendants refused to pay the assessments and uniformly denied that they were subject to the taxes or the jurisdiction of the governmental authorities assessing the taxes. Any further efforts by Plaintiffs or members of the putative Class to pursue administrative remedies

---

[15] 2009 Order.

[16] *City of Columbus,* at 687-88.

[17] *County of Monroe,* at 664-67; *City of Gallup,* at 4-6; *City of Goodlettsville,* 605 F.Supp.2d at 991 ("The plaintiff is excused from the exhaustion requirement on the grounds that exhaustion would be futile or useless").

[18] *See, County of Monroe,* at 664 ("Under these circumstances, the concerns about administrative autonomy which underpin the exhaustion of remedies doctrine are greatly attenuated or not present at all"); *Hotels.com, L.P. v. City of Columbus,* 286 Ga. 130 (2009) (exhaustion of administrative remedies not necessary or appropriate for declaratory relief); 2007 Order (administrative process does not apply to Plaintiffs' non-statutory claims).

"would be a charade and would simply delay the inevitable judicial resolution of the legal issues presented, while providing little or no benefit for the court, the agency, or the parties." *County of Monroe,* at 685.

## II.    PLAINTIFFS HAVE PROPERLY DEFINED THE CLASS.

Plaintiffs have proposed the following class definition:

> Plaintiffs and all counties and municipalities in the state of Georgia who levy an excise tax on rooms, lodgings and accommodations pursuant to O.C.G.A. §48-13-50, *et. seq.*

Plaintiffs' Motion at 2 [Doc. 366]. Defendants object, asserting that the proposed class "is likely to include members that suffered no injury" and thus is impermissibly overbroad. Defendants' Brief, at 17.[19] Amazingly, the Defendants took the exact opposite position before the District Court in *County of Monroe* and prevailed, causing that court to modify the proposed class definition **to comport exactly with the definition Defendants now oppose in this case.** Having prevailed on an opposite position before another court in this Circuit, Defendants are judicially estopped to challenge Plaintiffs' proposed definition here.[20]

---

[19] *See also, id.,* at 18-20 ("courts have refused to certify classes that were defined to include persons or entities that suffered no harm" and the class definition must insure "that those actually harmed by defendants' wrongful conduct will be recipients of the relief eventually provided").

[20] Judicial estoppel, an equitable doctrine that serves to protect the integrity of the judicial process, prevents a party from asserting a position inconsistent with one it

In *County of Monroe*, the plaintiffs proposed a two-pronged class definition:
(1) all counties within the State of Florida which had enacted a hotel excise tax
pursuant to the Florida enabling statute and (2) "have not received the tax due on
the amount received by Defendants as consideration for the rooms rented by them
located within those counties." *Id.,* at 663. In other words, plaintiffs' proposed
class in *County of Monroe* had a requirement, as Defendants propose here, that the
class members had to have suffered damages by Defendants' conduct. Defendants
objected to the second prong of the proposed definition because "the second prong
of the class definition employs terms that are dependent upon resolving the
County's claim on the merits…." *Id.* at 666. The court held: "This is a legitimate
objection: whether tax is 'due' on the Defendants' transactions will not be known
until the case has been resolved on the merits." *Id.*

To cure the problem complained of by defendants, the District Court in
*County of Monroe* simply deleted the second prong of the proposed class definition
so that the class definition read **exactly** as Plaintiffs propose herein: "all cities and
counties within the State of Florida that have enacted a tourist development tax
under the authority of §125.0104, Florida Statutes." *Id. Compare,* "all counties and
municipalities in the State of Georgia that levy an excise tax on rooms, lodgings

---

successfully asserted in a prior proceeding. *See, e.g., New Hampshire v. Maine,*
532 U.S. 742, 749-50, (2001).

and accommodations pursuant to O.C.G.A. §48-13-50, *et. seq.*" Plaintiffs' Motion, at 2. Defendants' position in *County of Monroe* shows that Plaintiffs' proposed definition in this case is proper and Defendants' objection is without merit.

To revise the class to counter Defendants' argument here would result in the very problems Defendants opposed in *County of Monroe*. The class could not be defined until the case was decided on the merits (to determine whether the Defendants owed taxes to the local governments) and the identity of jurisdictions in which Defendants actually sold rooms could change between certification and judgment. But, by adopting Plaintiffs' proposed class definition, the class is readily identifiable[21] and notices can be sent to putative members. Should there be isolated jurisdictions that have enacted excise tax ordinances but Defendants have not sold rooms in those jurisdictions, their identities will be readily apparent during the claims process. Even then, such jurisdictions would have an interest in the declaratory and injunctive relief sought in order to ensure future compliance with their tax ordinances should Defendants subsequently sell rooms within their jurisdictions.

Moreover, as is prevalent in their Response, Defendants misstate authority in their desperate attempt to persuade this Court to deny class certification. For

---

[21] *See, e.g.,* Brinson Decl. [Doc. 366-12].

example, Defendants cite *In re Polypropylene Carpet Antitrust Litig.,* 178 F.R.D. 603 (N.D.Ga. 1997) with regard to "a minimum standard of definiteness" required for class definition (Defendants' Brief, at 17), but fail to apprise the Court of the preceding sentence to that proposition, which includes that, at the class certification stage, "'[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained.'" *Id.* at 612 (emphasis added).[22] *See also, Buford v. H & R Block, Inc.,* 168 F.R.D. 340, 347 (S.D.Ga.1996) (cited in Defendants' Brief, at 18) ("While the definition of the class must not be vague or difficult to apply, the implicit definition requirement does not require an overly strict degree of certainty and is to be liberally applied").

Plaintiffs' definition properly defines the potential class members for class certification purposes. The determination of which cities or counties may avail themselves of the remedies sought by Plaintiffs is premature.

---

[22] Defendants' examples of courts allegedly denying certification because classes were defined to include those not harmed by the complained-of conduct are inapplicable as they involve class definitions where certain proposed members could *never* have made the substantive claim(s) asserted. Such is not the case here. Defendants' practice of not remitting taxes on the total amount charged to the consumer is ongoing (except in Atlanta and Columbus, where Defendants have been ordered to remit as legally required). If a Georgia city or county has a hotel excise tax ordinance and any Defendant books a room at that locale in the future, that city or county will have a claim. The latter aspect of class membership will be easily "ascertained" by reference to Defendants' own transactional data.

## III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES.

Defendants assert that (1) Plaintiffs lack standing to sue Defendants and thus are not adequate class representatives[23] and (2) Plaintiffs have failed to establish sufficient numerosity[24] on the sole ground that neither the Plaintiffs or putative class members have exhausted their administrative remedies against Defendants.

Tellingly, Defendants wholly fail to acknowledge or address this Court's 2009 Order; the Georgia Supreme Court's opinions in *City of Atlanta,* and *City of Columbus*; and the decision of other District Courts in *County of Monroe,* 265 F.R.D. at 664-666; *City of Goodlettsville,* 605 F.Supp.2d at 987-992; or *City of Charleston v. Hotels.com, L.P.,* 520 F.Supp.2d 737, 770 (D.S.C. 2007), all of which rejected Defendants' argument.

Amazingly, Defendants cite and quote this Court's 2007 Order as authority for their argument that Plaintiffs lack standing to sue Defendants and therefore cannot be class representatives,[25] but ignore this Court's 2009 Order, which discussed the *City of Atlanta* and *City of Columbus* decisions and held:

> The Court therefore concludes that because Plaintiffs have assessed Defendants and Defendants have contested the assessment, the administrative process contemplated under the statute is complete, and the case can move forward.

---

[23] Defendants' Brief, at 22-25.
[24] *Id.,* at 20-22.
[25] *See,* Defendants' Brief, at 24.

2009 Order, at 18-19. After this Court issued its Order, the Defendants did not

move for reconsideration. But now, more than a year and a half later, Defendants

act as if the 2009 Order never existed or, if it did, it was wrong.

The 2009 Order is undeniably correct as it follows the law as established by

the Georgia Supreme Court in *City of Columbus* where, as here, after assessment,

Defendants refused to make payment and denied they were subject to the

ordinances or the enabling statute:

> Expedia rejected the assessment and advised that it was not subject to
> the City's ordinance or the enabling statute. Since neither the City's
> ordinance or the Enabling Statute provide any other process or
> procedure to review the written assessment, the City has completed its
> administrative process.

*City of Columbus,* at 687-688.[26]

Any further resort to administrative remedies by the named Plaintiffs or the

putative Class members would be futile. Although this Court originally declined to

---

[26] Defendants' challenge to Plaintiffs' assessments on the grounds that they were
made on behalf of the government by Plaintiffs' counsel is not only tardy, but
without merit. This Court has previously held that Plaintiffs' counsel are not
disqualified by virtue of their contingent fee arrangement. 2007 Order, 2007 WL
6887932 at *24. In that Order, this Court also acknowledged the limited auditing
capabilities of the Plaintiffs and authorized them to hire outside personnel for the
audits if necessary. *Id.* at *18. Defendants acknowledge this. *See,* Defendants'
Brief, at 12. *See also, Priceline.com, Inc. v. City of Anaheim,* 100 Cal.App. 4th
1130, 1143, n.8 (Cal.Ct.App. 2010) (distinguishing *Sears Roebuck v. Parsons* 401
S.E.2d 4 (Ga. 1991), cited in Defendants' Brief, at 2, 24).

excuse Plaintiffs from pursuing their administrative remedies on the basis of

futility, the Court noted that Defendants had denied that they were subject to the

excise tax "throughout the litigation" and the proof in the pudding regarding

Plaintiffs' futility argument would be determined by Defendants' response to

Plaintiffs' assessment process. 2007 Order, 2007 WL 6887932 at *23.

In its 2009 Order [Doc. 272], this Court found:

> Defendant contested essentially every aspect of Plaintiffs'
> assessments,[1] and made it clear that they had no intention of paying
> the amounts assessed against them without at least receiving further
> information from Plaintiffs.

> _____
> [1]Defendant argued that the assessments were invalid on their
> face, that the assessments failed to offer an explanation of the
> factual basis for the assessments, and argued once again that
> they could not legally be subjected to the tax.

Defendants' denials have been uniform across the country.[27] Under such

circumstances, other courts have uniformly held that the putative class members'

failure to exhaust administrative remedies is not a bar to their being class members.

*Id.* In fact, courts have held that Defendants' exhaustion of administrative remedies

theory is *inapplicable* to *any* Rule 23 class certification issues:

> In light of the foregoing, *the exhaustion of administrative remedies
> doctrine is inapplicable here and irrelevant to any of the Rule 23
> requirements that Defendants contest.* Neither the County nor the

_____

[27] *See, e.g., City of Goodlettsville*, 605 F.Supp.2d at 991; *County of Monroe*, 265
F.R.D. at 664-65.

other members of the putative class were required to resort to the administrative process before filing suit. Accordingly, exhaustion of remedies or the lack thereof *has no bearing on whether the County has standing* to pursue this lawsuit, *or whether the members of the putative class are sufficiently numerous*. Defendants further argue that this issue precludes the County from demonstrating typicality, because it subjects the County to a "unique defense." .... As noted above, exhaustion of administrative remedies is not a merits-based defense. Even if it were, however, it would hardly be "unique" vis-à-vis the County, as Defendants argue that all but three of the fifty-nine putative class members have failed to exhaust administrative proceedings. For the same reasons, *exhaustion does not create "substantial conflicts"* between the County and other putative class members such that the County would not be an *adequate class representative*. Lastly because neither the Court nor the jury will be called upon to make individualized determinations-or any other kind of determinations-as to exhaustion, *it is irrelevant to the Rule 23(b)(3) requirements of predominance and superiority*.

*County of Monroe,* 265 F.R.D. at 266 (emphasis supplied).

## IV.    THE NAMED PLAINTIFFS' INTERESTS ARE NOT ANTAGONISTIC TO OTHER PUTATIVE CLASS MEMBERS.

Plaintiffs only seek Defendants' compliance with their and the putative class members' existing excise tax ordinances. If, for some reason, an individual class member wishes to succumb to Defendants' threats to blacklist it from Defendants' websites if it forces Defendants to pay existing taxes, the class member is free to modify its ordinance or opt out of the class.[28]

---

[28] "If particular class members nevertheless wish to litigate their cases individually, they may simply opt out of the class. As noted by the court in *County of Monroe,* county and municipal governments are 'better equipped to assess their rights and to

## V.    SUFFICIENT COMMONALITY AND TYPICALITY EXIST FOR CERTIFICATION.

Plaintiffs have asserted two primary bases to hold Defendants liable to collect and remit taxes upon the full consideration paid to them for occupancy of the rooms they sell.

### A.    Voluntary Insertion Claim

Under one claim – as upheld by the Georgia Supreme Court – to prevail on liability, Plaintiffs need only show that:

> (1) as a matter of fact, [Defendants] contract with hotels to collect the customer's hotel tax payment on behalf of the hotel; (2) [Defendants are] not prohibited by the Enabling Statute or the City's ordinance from contracting to collect, on the hotels behalf, the customer's hotel tax payment; [and] (3) as a matter of law [the ordinances' language] and "lodging charges actually collected," (O.C.G.A. §48-13-51(a)(1)(B)(i)) include the room rate that [Defendants] charge [their] customers and not the negotiated wholesale rate. . . .

*City of Columbus*, at 686.[29]

With respect to this theory, Defendants readily acknowledge the Supreme Court's finding that they all operate under the Merchant Model wherein they collect taxes from their customers for later remittance to the hotels or that their

---

evaluate the consequences of opting out than the lay individuals who comprise most classes.'" *City of Goodlettsville,* 267 F.R.D. at 535.

[29] Whether Defendants come within the definitions of "operators", "furnishers" or "providers" of hotel rooms is irrelevant to consideration of liability under this theory as Defendants have "willingly inserted themselves as a matter of contract into the local taxation scheme." *Id.*, at 690, 691.

business practices do not vary from jurisdiction to jurisdiction within the State or among class members.[30] Other courts have found the Defendants' business practices to be uniform across the state and among class members.[31]

Nor do Defendants contend that any applicable ordinances prohibit them from collecting taxes on behalf of the hotels, and the Supreme Court has already held that the Enabling Statute does not prohibit such conduct. *City of Columbus,* at 688. The Supreme Court also found that "lodging charges actually collected" as set forth in the Enabling Statute requires collection of taxes upon "the price [Defendants] demand from the consumer for the right to occupy the room and not the price [Defendants] agree to pay the hotel for the room." *Id.*, at 689-90. Thus, the only potential variable from the *City of Columbus* case is whether putative class

---

[30] As discussed above, Defendants' own admissions establish the uniformity of their practice of injecting themselves into the collection of hotel excise taxes. *See, e.g.,* Declarations of Justin Richmond, ¶¶9, 21-22, 27-28; Clem Bason, ¶¶10, 12, 24-26; Eric Craig, ¶¶18-19, 24; Noreen Henry, ¶¶10-11, 17, 23; Christopher L. Soder, ¶¶23, 25, 27-31, 41-43, 48 (Attach. B, Exs. 1-5 respectively [Doc. 393]). *See also,* Defendants' Objections, Attach. H, I (citing OTCs' contract provisions regarding collection of taxes from consumers and their remittance to hotels); Exhibits to Declaration of David W. Davenport in Support of Plaintiffs' Motion for Class Certification (sample contracts containing tax provisions) [Doc. 368].

[31] *See, City of Goodlettsville,* 267 F.R.D. at 532; *City of San Antonio,* 2008 WL 2486043 at *10 ("As Defendants' corporate representatives have confirmed, the *amount* of tax may differ between the cities, but the manner in which the defendants otherwise conduct their business (including the manner in which they calculate, assess and collect tax) does not change from city to city, nor has it changed in any material way over time.")

members' ordinances contain some language that would require a different application of the tax than under the Enabling Statute. A review of the subject ordinances in this regard confirms that no such distinction exists.

First, the tax is always levied on the consumer "on the lodging charges actually collected" for the lodging. O.C.G.A. §48-13-51(a)(1)(B)(i) and (ii). Second, a review of the summary of ordinances submitted with Plaintiffs' Motion[32] reveals only a few irrelevant variations in language as to what the tax is to be applied, with none of the variations material for class certification purposes. As Defendants note, the vast majority of the ordinances provide that the tax is to be applied to the "rent." Defendants' Brief, at 38. Defendants also concede that "rent" is typically defined as "the consideration received for occupancy". *Id.* Plaintiffs submit that there is no material difference between "the charge to the public" and "the consideration received for occupancy" and at least one District Court has agreed. In *City of Goodlettsville*, the tax was assessed "on the consideration charged to the transient" and the court found that, under the ordinance, "the entire amount charged by the defendants" was subject to the excise tax. 605 F. Supp. 2d at 997-98. No magic language is required to apply the tax to the gross amount charged the consumer, and minor deviations in the language of the ordinances will

---

[32] Brinson Decl. [Exhibit C, Doc. 366-12].

not defeat typicality or commonality. *City of San Antonio,* 2008 WL 2486043, at *7, 15 (construing "the total price of a sleeping room" as synonymous with "cost of occupancy of any room" and both requiring application of tax to total amount of consideration for room paid to Defendant). The OTCs must be renting or furnishing rooms because they are the only ones collecting the consideration.

"Rent" is defined in Black's Law Dictionary 1297 (6th ed. 1990) as follows:

> Consideration paid for use or occupation of property. In a broader sense, it is the compensation or fee paid, usually periodically, for the use of any rental property, land, buildings, equipment, etc.

Most recently, the Supreme Court of South Carolina rejected Travelscape's [an Expedia company] terminology semantics:

> *Clearly Travelscape [Expedia] was engaged in the business of furnishing accommodations in South Carolina during the audit period, seeing as it: (1) entered into contracts with hundreds of hotels* in South Carolina in which the hotels agreed to accept a discounted price, or net rate, for reservations made on Expedia; *(2) sent employees to South Carolina for the purpose of negotiating such agreements; and (3) booked reservations in exchange for consideration at hotels located in this State.* Accordingly, we find *the plain language of section 12-36-920(E) imposes the sales tax on Travelscape because it was engaged in the business of furnishing accommodations in South Carolina.*

*Travelscape, LLC v. S.C. Dept. of Revenue,* _ S.E.2d _, 2011 WL 149864 at

*6 (S.C. 2011) (emphasis added; opinion is attached hereto as Exhibit "3").[33]

A quick review of Plaintiffs' counsel's Supplemental Declaration reveals no material differences in the ordinances that would defeat class certification. None of the variations suggests that the subject of the tax is upon anything less that the total charge to the consumer for the lodging ("the charge to the public" in the Columbus ordinance). As summarized by the *San Antonio* court:

> In sum, Defendants' argument about the possible effect of the "different language" in the San Antonio ordinance is a red herring .... Plaintiff is simply alleging that the bed tax must be paid on the amount that the hotel occupant or customer is charged at the time of on-line booking, regardless of how Defendants arrive at that number or characterize their mark up, fees or charges. .... The fact that the San Antonio ordinance is not congruent to the other municipal ordinances does not defeat typicality.

*City of San Antonio*, 2008 WL 2486043 at *7.

## B.     <u>Statutory Liability Claim</u>

Plaintiffs' alternative liability basis asserted against Defendants is that they are liable directly under the Enabling Act and ordinances as persons charged with the obligation to collect and remit hotel taxes to Plaintiffs. Defendants spend much

---

[33] While this was not a class certification decision, it is yet another decision that reveals that there is a national business model at work here. The Defendants have failed to show this Court one contract under their merchant model where they have no obligation to collect the taxes or one in which they agree to remit taxes to the hotel on the retail charges. The reason is telling: There are none.

time arguing the merits as to why they believe they are not subject to the Enabling Act and ordinances,[34] but just two paragraphs as to why the issue of liability under the ordinances is inappropriate for class certification. Defendants' Brief at 37-38.

Defendants assert that "discrepancies" among the ordinances as to "what" they tax and "who" is to collect the tax "swamp" any commonality among the ordinances. *Id.* Not so. First, Defendants' voluntary insertion of themselves across the State into the traditional relationship between hotels and consumers (i.e., transacting directly with the consumer, collecting rent and taxes from the consumer) causes them to be obligated to collect the taxes **because they are already doing so**, regardless of any terminology differences in the local ordinances. *City of Columbus.* Further, any variations in the ordinances are not material so as to defeat class certification.

Plaintiffs have already demonstrated the lack of any material differences among the ordinances as to what they tax. As to who is obligated to collect the taxes, a review of the ordinances reveals a similar lack of material variations in the terminology used. The ordinances require the "operator", "provider", furnisher" or, as Defendants' note, "dealer"[35], to collect the tax.[36] The Enabling Statute itself uses

---

[34] Defendants' Brief, at 6-11, 30-32, 38-39.

[35] Defendants' Brief, at 37. "Dealer is defined in the Georgia Code to include anyone who "leases or rents tangible personal property for a consideration

alternative terms to describe who is to collect the tax – person "operating a hotel"[37] "providing the room,[38] "furnished by any person."[39] Once again, there is no magic word necessary. What is material and most important is that the Enabling Statute unquestionably makes it the obligation of the person collecting the taxes to remit them, and, in this case, <u>that is the Defendants</u>.[40] As held by the District Court in *City of San Antonio,* 2008 WL 2486043, at *11: "While the language of these municipalities is not identical in every respect, they are strikingly similar and the differences, if any, appear to be mere semantics."[41]

---

permitting the use or possession of the property without transferring title to the property" and anyone who "sells at retail or offers for sale at retail, …or for use … in this state any tangible personal property." O.C.G.A. §48-8-2(3)(D) and (G).

[36] *See,* Brinson Supp. Decl.

[37] O.C.G.A. §48-13-51(a)(1)(B)(i).

[38] O.C.G.A. §48-13-51(a)(1)(B)(ii).

[39] O.C.G.A. §48-13-51(b)(2) .

[40] Defendants' effort to explain away the conforming effect of the Enabling Statute upon variations in local ordinances is without merit. Defendants' Brief, at 29-30. There is nothing to suggest that the <u>1998</u> amendment to the Enabling Statute was a reaction to a <u>1982</u> court decision or that the conforming language is not as universal as stated on its face.

[41] Defendants' sole remaining commonality argument relates to their dormant Commerce Clause defense. Defendants' Brief, at 32. In this case, determination of the defense does not defeat commonality. *County of Monroe,* 265 F.R.D. at 671. ("[I]t is undisputed that Defendants' conduct is the same as to all class members. Therefore, Defendants' Commerce Clause defense will either pertain to every class member, or to none of them"). The defense has also been rejected on the merits. *City of Goodlettsville,* 267 F.R.D. at 534.

## VI.   CERTIFICATION UNDER RULE 23(B)(2) IS PROPER.

Defendants ignore the criteria utilized in this Circuit to determine whether

monetary relief is "incidental to the requested injunctive or declaratory relief" so as

to authorize class certification for both types of relief. In *Murray v. Auslander*, 244

F.3d 807 (11th Cir. 2001), the court adopted the rule of the Fifth Circuit:

> "By incidental, we mean damages that flow directly from liability to
> the class *as a whole* on the claims forming the basis of the injunctive
> or declaratory relief. . . .Ideally, incidental damages should be those to
> which class members automatically would be entitled once liability to
> the class (or subclass) as a whole is established."

*Id*. at 812.

Here, unlike in *Murray*, which involved individual pain and suffering

damages for each class member, the Plaintiffs will all be entitled to the same

formulaic damages. *See, City of San Antonio,* at *12 ("it is clear that alleged

damages are subject to common proof and can be calculated on a formulaic

basis"). Thus, certification under Rule 23(b)(2) and (3) is proper. *In re Piedmont

Office Trust, Inc. Sec. Litig.*, 264 F.R.D. 693 (N.D. Ga. 2010).[42]

## VII.   CALCULATION OF DAMAGES DOES NOT PRECLUDE PREDOMINACE UNDER RULE 23(B)(3).

Defendants assert that damage calculations in this case will require

---

[42] *But see, City of Gallup,* (rejecting Rule 23(b)(2) certification under different
Tenth Circuit standard).

individualized determinations precluding predominance under Rule 23(b)(3). Defendants' Brief, at 40-41. However, courts have examined this issue and rejected such an argument. *See, City of Goodlettsville,* 267 F.R.D. at 533. As noted above, the *San Antonio* court found at the class certification stage that the plaintiffs' damages could be calculated on a formulaic basis. Under such circumstances, "the fact that damages must be calculated on an individual basis is no impediment to class certification." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004). In fact, the *San Antonio* court conducted a jury trial after entry of the above opinion and the jury awarded in excess of $20,000,000 in class-wide damages based on formulas referenced in the opinion.[43]

The *City of Goodlettsville* court was particularly skeptical of Defendants' similar argument asserted there:

> But the force of this argument is significantly undercut by the fact that defendants *already* remit occupancy taxes to hotels based on wholesale rates. Obviously, the defendants are able to determine which types of transactions are covered by which taxes. *See, City of San Antonio* [cit. omit.] ("[T]here is nothing in the record to suggest that Defendants, who have been calculating taxes and fees for years, are confused about specific charges to the hotel occupant and whether a tax is assessed thereon.").

In this case, in preparation for the mediation among the parties, Defendants

---

[43] *See, City of San Antonio* Verdict Form, attached hereto as Exhibit "4".

produced transactional data from which Plaintiffs developed formulaic damages

calculation programs for each Defendant's data and calculated actual class wide

damages, which results were provided to Defendants.[44] To calculate individual

class member's damages, all that needs be done is to apply the formulas already

developed to the transactional data for hotels in each class member's jurisdiction.

In any event, any damages issues presented do not affect predominance

under Rule 23(b)(3) because they do not relate to liability issues. As held in *County

of Monroe,* 265 F.R.D. at 670:

> All of these issues, however, relate to calculating damages, rather
> than liability. They therefore do not bar a finding of predominance
> here. *See, Allapattah Servs., Inc.v. Exxon Corp.,* 333 F.3d 1248,
> 1261 (11th Cir. 2003) ("[N]umerous courts have recognized that the
> presence of individualized damages issues does not prevent a
> finding that the common issues in the case predominate").

## VIII.   OTHER CLAIMS ARE PROPER FOR CLASS RESOLUTION.

Defendants attack Plaintiffs' conversion, unjust enrichment, and Uniform

Deceptive Trade Practices Act ("UDTPA") claims as "plainly meritless" and

misstate the ruling in *Velez v. Novartis Pharms. Corp.,* 244 F.R.D. 263 (S.D.N.Y.

2007), which Defendants urge requires an examination of the merits of such claims

(Defendants' Brief at 44, n. 17). This is not the law in *Velez,* nor in this Circuit. A

---

[44] Plaintiffs will be happy to file their calculations and formulas for the Court's
review if Defendants agree to waive possible settlement discussion privileges.

trial court "should not determine the merits of a claim at the class certification stage" (but it may consider such "to the degree necessary to determine whether the requirements of rule 23 will be satisfied"). *Heffner v. Blue Cross & Blue Shield of Ala., Inc.,* 443 F.3d 1330, 1337 (11th Cir. 2006).[45]

Class certification is appropriate for conversion, unjust enrichment and/or UDTPA claims such as are asserted by Plaintiffs herein. As held by the District Court in *City of Goodlettsville,* 267 F.R.D. at 535-536:

- "the kind of individualized inquiry that is usually necessary for resolution of an unjust enrichment claim" does not apply to Defendants' conduct;

- "if the defendants have failed to remit taxes for which they are liable, even in good faith, the class members will be able to show conversion"; and

- "[b]ecause the unjust enrichment and conversion claims are essentially dependent on the class members' tax claims, they will rely on the same common evidence as the tax claims. Therefore, they are amenable to class-wide adjudication."[46]

---

[45] *See also, Castano v. Amer. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir. 1996) (recognizing "the unremarkable proposition that the strength of a plaintiff's claim should not affect the class certification decision").

[46] *Accord, County of Monroe,* 265 F.R.D. at 668, 670 (conversion and unjust enrichment claims appropriate for class certification as they will be premised on same class-wide proof as tax claims; concern for individualized inquiries does not

Finally, to the extent the merits of the claims are relevant at this stage, Defendants ignore the prior review of these claims by this very Court. *See* 2007 Order, 2007 WL 6887932 at *22 (refusing to dismiss such claims).

## IX.    CONCLUSION.

Defendants would have this case disintegrate into more than 250 separate actions spread throughout the State in which every single city, town, and county in Georgia having a hotel excise tax ordinance needs to individually audit these out-of-state companies and individually proceed to litigate against the OTCs and their national law firms over the same issue, under the same business model, and controlled by the same Supreme Court of Georgia caselaw.

The unspoken goal of Defendants' Response is to divide and conquer. Defendants know that if a small town in Georgia is owed $50,000, it will spend more than $50,000 in costs and fees to battle these companies and recover that money. But, class certification was designed to address the very predicament that small governments would face if forced to litigate individually. Class certification allows for class members with small, but important, claims to still obtain judicial review and relief and thereby promotes judicial economy.

*****************

apply, including without limitation, because "Defendants' business operations are the same as to all members of the putative class").

This is to certify that the foregoing document was prepared using Times New Roman 14 point font in accordance with LR 5.1(C).

Respectfully submitted this 11th day of February, 2011.

**BRINSON ASKEW BERRY SEIGLER RICHARDSON & DAVIS, LLP**

By:   /s/ Robert M. Brinson
      Robert M. Brinson
      Ga. Bar No. 082900
      City Attorney, Rome, Ga.
      /s/ J. Anderson Davis
      J. Anderson Davis
      Ga. Bar No. 211077

P.O. Box 5007
Rome, GA 30162-5007
Telephone: 706-291-8853
Facsimile: 706-234-3574

**LAMAR ARCHER & COFRIN, LLP**

By:   /s/ Robert C. Lamar
      Robert C. Lamar
      Ga. Bar No. 431175
      /s/ David W. Davenport
      David W. Davenport
      Ga. Bar No. 205962

50 Hurt Plaza, Suite 900
Atlanta, Georgia 30303
Telephone: 404-577-1777
Facsimile: 404-577-9490

**CRONGEYER LAW FIRM, PC**

By:   /s/ John W. Crongeyer
      John W. Crongeyer, M.D.
      Ga. Bar No. 197267

2170 Defoor Hills Road
Atlanta, Georgia 30318
Telephone: 404-542-6205
Facsimile: 404-872-3745

**THE GORDON LAW FIRM**

By: /s/ Walter J. Gordon
   Walter J. Gordon
   Ga. Bar No. 302488
   County Attorney, Hart County
   Ga.

P.O. Box 870
Hartwell, Georgia 30643
Telephone: 706-376-5418
Facsimile: 706-376-5416

**THE LAW PRACTICE
OF KEVIN ROSS, LLC**

By: /s/ Kevin A. Ross
   Kevin A. Ross
   Ga. Bar No. 675184

3290 Northside Parkway, Suite 775
Atlanta, Georgia 30327
Telephone: 404-572-6622
Facsimile:  404-572-5909

**ARCHER & LOVELL, P.C.**

By:    /s/ David G. Archer
       David G. Archer
       Ga. Bar No. 021100
       City Attorney, City of Cartersville,
       Ga.

P.O. Box 1024
Cartersville, Georgia
Telephone: 770-386-1116
Facsimile: 770-382-7484

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing

with the Clerk of Court using **PLAINTIFFS' REPLY TO DEFENDANTS'**

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

the CM/ECF system, which will automatically send notification of such filing to all

parties at interest:

Edward Hine, Jr.
111 Bridgepoint Plaza
Suite 300, Post Office Box 5511
Rome, Georgia 30161
Email: ed@edwardhinelaw.com

E. Kendrick Smith
Robin A. Schmahl
Sean P. Costello
JONES DAY
1420 Peachtree Street
Suite 800
Atlanta, Georgia 30309
E-mails: eksmith@jonesday.com
raschmahl@jonesday.com
scostello@jonesday.com

James P. Karen
Deborah S. Sloan
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Emails: jkaren@jonesday.com
dsloan@jonesday.com

David F. McDowell
MORRISON & FOERSTER
555 West Fifth Street
Suite 3500
Los Angeles, CA  90013
Email:  dmcdowell@mofo.com
Marcus G. Mungioli
KELLY HART & HALLMAN, LP
Suite 2500
201 Main Street
Fort Worth, TX 76102
Email:  marcus.mungioli@khh.com

Paul E. Chronis
Elizabeth B. Herrington
Purvi G. Patel
Jeffrey A. Rossman
Joshua G. Herman
Lazar P. Raynal
MCDERMOTT, WILL & EMERY, LLP
227 West Monroe Street
Chicago, IL  60606
Emails: pchronis@mwe.com
eherrington@mwe.com
ppatel@mwe.com
jrossman@mwe.com
jherman@mwe.com
lraynal@mwe.com

Karen L. Valihura
Ralph K. Herndon, Sr.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
Post Office Box 636
Wilmington, DE  19899
Emails:  kvalihur@skadden.com
Randolph.Herndon@skadden.com

263484                                30

Celso M. Gonzalez-Falla
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Suite 6800
1000 Louisiana
Houston, TX 77002
Email: Celso.Gonzalez-Falla@skadden.com

John D. Pernick
BINGHAM, MCCUTCHEN, LLP
3 Embarcadero Center
San Francisco, CA 94111
Email: john.pernick@bingham.com

David J. Stagman
KATTEN, MUCHIN, ROSENMAN, LLP
525 West Monroe Street
Suite 1600
Chicago, IL 60661
Email: david.stagman@kattenlaw.com

This 11th day of February, 2011.

/s/Robert M. Brinson
ROBERT M. BRINSON
Georgia Bar No. 082900